[Sac. No. 4565. In Bank.—July 28, 1933.]

COLORADO POWER COMPANY (a Corporation), Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

560

Wm. B. Bosley, Thos. J. Straub and Robert H. Gerdes for Appellant.

Corbet & Selby, Frank J. Solinsky, Edward R. Solinsky, Robert M. Searls and Glenn West for Respondent.

T. P. Wittschen and L. W. Irving, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—Defendant appeals on the judgment-roll alone, from all but two specified portions of a judgment in an action brought by the plaintiff to enjoin defendant from interfering with the natural flow of the north fork of the Mokelumne River in violation of plaintiff's riparian rights. The action was tried before the court without a jury, and

resulted in a verdict denying the injunction on condition defendant pay the plaintiff $1,000 as damages, and giving the plaintiff the further right to compel the defendant to release and discharge the waters involved, substantially in accordance with a plan submitted by defendant and pleaded as a special defense in its amended answer. The trial court retained jurisdiction of the cause for this purpose. Plaintiff does not appeal.

The judgment specifically provided: "If said sum of $1,000 and plaintiff's costs of suit, together with legal interest thereon from the date of entry of this judgment, shall not be recovered by, or paid to, plaintiff within ten days after the judgment herein shall have become final, then defendant, its successors and assigns, shall be and hereby are enjoined and restrained from impounding or storing" any of the waters in question.

The facts as found by the trial court and so far as pertinent here are as follows:

The plaintiff, a California corporation, is the owner of certain lands riparian to the Mokelumne River. These lands are located about ten miles downstream from Electra. So far as defendant is concerned, plaintiff possesses the full riparian rights incidental to its ownership of these lands, subject only to certain vested appropriation rights of defendant, which rights were fully protected by the judgment in this case. The physical characteristics of plaintiff's lands are such as to admit of the economical construction and operation thereon of a low hydroelectric power project. Plaintiff, for some time has been planning to construct such a plant on its lands, using the unregulated flow of the stream as motive power. The trial court found that the construction of such a plant was feasible, and was economically justified by the agricultural and industrial demands for electric energy in the territory adjacent to plaintiff's proposed project.

Defendant, also a California corporation, is the owner of a hydroelectric power plant located on the Mokelumne River at Electra, about ten miles upstream from plaintiff's lands. For many years, defendant, by means of reservoirs, ditches and canals, has impounded a portion of the flow of the Mokelumne River for power purposes and for other public purposes. These water rights were gained by de-

fendant by virtue of valid appropriations, and are not involved on this appeal, the judgment herein fully recognizing defendant's rights therein. Defendant owns certain other lands, upstream from Electra and riparian to the north fork of the Mokelumne River and some of its tributaries. The north fork is a tributary of the Mokelumne River and joins the latter a short distance upstream from Electra. For some time prior to the commencement of this action defendant has been in the process of constructing several large dams and reservoirs on these upper riparian lands for the purpose of impounding, storing and regulating all of the usual, periodic and natural flow of the north fork and some of its tributaries for power purposes. In anticipation of this proposed power development, defendant acquired certain permits issued by the state water commission, acquired a license from the federal power commission, and a certificate from the state Railroad Commission to the effect that public convenience and necessity required the construction and operation of this project. It is defendant's plan to impound and store the water of the north fork and some of its tributaries in these proposed reservoirs annually, to their capacity, and, by means thereof, to regulate artificially the flow of the stream in the manner as specifically set forth in its amended answer, in a special defense. In this defense, defendant set forth that it was its intention to impound and store in its proposed reservoirs during the seasonal periods of high flow so much of the waters of the north fork and its tributaries as would be necessary to fill the reservoirs to their respective capacities, and to release the same in dry seasons of the year so as, at all times, so far as possible, to maintain a regulated flow throughout the year. It should be here mentioned that the usual and ordinary flow of the north fork is very irregular.

The trial court also found that the proposed storage would produce artificial changes in the natural and periodic flow of the Mokelumne River where it flows over plaintiff's lands; that such storage "would necessitate changes in plaintiff's present plans for the construction of a power plant, and the use of the waters of the Mokelumne River for the operation of such plant on plaintiff's said riparian lands, and would necessitate changes in plaintiff's proposed beneficial riparian use of the waters of said river, and would

cause substantial damage to the plaintiff through the invasion and violation of plaintiff's riparian rights by the establishment of an artificial control of the principal tributary of the Mokelumne River above the lands of the plaintiff, adversely to plaintiff's right to the natural flow of said river''.

The court also found that defendant, by means of its dams and reservoirs and gates and works to be installed therein, will have the power ''to impound and store waters in said reservoirs to the capacity thereof, and to release and return the stored water to the river according to its will and convenience. There is no assurance, except such as is afforded by nature and by the law of the land, that the waters to be impounded and stored in said reservoirs and to be discharged therefrom, and to be used and returned to the Mokelumne River at or above the tail-race of Electra power plant by the defendant, will actually flow down to and over the lands of the plaintiff and other lower riparian proprietors.''

The lower court also found that ''considered solely with reference to physical effects'' the proposed storage and artificial regulation of the stream, if carried out as proposed by defendant, will not ''interfere with any actual or anticipated beneficial use of the waters of the Mokelumne River by the plaintiff upon its said riparian lands, or damage or diminish the value of said lands'' if defendant shall actually return the regulated waters into the Mokelumne River in accordance with its proposed plan, and if such waters so released actually shall flow down to plaintiff's riparian lands.

A portion of another finding reads: ''[S]uch storage and defendant's proposed regulation of the natural flow of water in said North Fork by means of such storage and the discharge of stored water from the last mentioned reservoirs would constitute a violation and invasion of plaintiff's riparian rights, as owner of its said riparian lands, to the use thereon of the waters of the said Mokelumne River, as such waters would naturally flow, and, if continued for the period prescribed by the statute of limitations, would irreparably impair such riparian rights, and would thereby damage the plaintiff, and therefore ought to be enjoined, unless defendant shall pay to plaintiff just compensation for

the damage to be caused by defendant's violation and invasion of plaintiff's said riparian rights."

Also a part of finding XXIV is as follows: "Plaintiff is entitled to recover from defendant just compensation for all damages suffered and to be suffered by reason of the violation and invasion of plaintiff's riparian rights by defendant's impounding and storage of waters in said Salt Springs, Deer Valley and Lower Bear River Reservoirs, and defendant's regulation of the natural flow of the Mokelumne River by means of such impounding and storage of water, and the subsequent discharge of stored water from said reservoirs, as proposed by defendant in its said additional defense. The amount of such just compensation is hereby ascertained and determined to be the sum of one thousand dollars ($1,000), together with the right to compel defendant, its successors and assigns (a) to release and discharge" (here follows the amount of water to be released and the conditions thereof).

The major contention of defendant is that under the facts of this case the seasonal storage of water for power purposes constitutes a legitimate riparian use. This point has been so recently before this court and so fully and completely disposed of adversely to defendant's contention that no necessity exists for a lengthy discussion here. Seasonal storage of water for power purposes is not a proper riparian use, but constitutes an appropriation, so that if continued for the time prescribed by the statute of limitations, it will ripen into a prescriptive right. The lower riparian proprietor, in such a case, when such storage substantially interferes with any existing or prospective riparian use of the waters of the stream, is entitled to an injunction to restrain such use, or damages for the invasion of his riparian rights. The above propositions were fully and completely settled in *Herminghaus* v. *Southern California Edison Co.*, 200 Cal. 81 [252 Pac. 607], and in *Seneca Con. Gold Mines Co.* v. *Great Western Power Co.*, 209 Cal. 206 [287 Pac. 93, 70 A. L. R. 210]. These two cases set at rest the question of whether an upper riparian owner can, in the exercise of a riparian right, dam the entire flow of a stream and hold the water from the wet season to be used in the dry season, and return the water to the stream at its own will and convenience. These two cases determined that such seques-

tration of the waters of a stream was not authorized by the riparian right and constituted an appropriation of the waters of the stream. In the Herminghaus case, the action was by a lower riparian against an upper riparian owner who proposed to store seasonably and artificially the flow of the waters of the stream. The upper riparian owner contended that this was a proper riparian use. The point presented for decision was whether or not seasonal storage was a proper riparian use, and this court squarely held that it was not. An injunction in favor of the lower riparian owner was affirmed. ■■ In that decision this court recognized, and now recognizes, that the use of the stream for power purposes, even where it is necessary to dam the stream and temporarily detain the water, where the water so detained is presently returned to the stream, is a proper riparian use, but in no uncertain language held that rule had no application to seasonal storage, resulting in an artificial regulation of the entire flow of the stream.

If there were any doubt as to the holding and effect of the Herminghaus case, it was fully set at rest by the decision of this court in the Seneca case. In the Seneca case, the upper riparian owner had stored the water for the period required by the statute of limitations. During this entire period the plaintiff, a lower riparian proprietor, had enjoyed the use of all the water of the stream which it needed for riparian purposes. The lower riparian owner complained that, so far as it was concerned, the storage by the upper riparian owner was in the exercise of the riparian right and that, therefore, no prescriptive rights had been acquired by the upper riparian owner. The trial court, in effect, so held. In reversing the lower court this court, following the reasoning of the Herminghaus and other cases, unequivocally held that seasonal storage was not a riparian use.

The reasoning used in the above two cases and the decisions therein, completely dispose of the contentions of appellant in the present case. It must, therefore, be held that seasonal storage is not a proper riparian use but constitutes an appropriation of the waters.

We do not find it necessary to discuss the question of whether an upper riparian owner may appropriate water when such water is in excess of all the reasonable present or prospective needs of lower riparian owners. In the pres-

ent case the trial court found that the proposed storage would cause substantial damage to plaintiff.

■ In accordance with the proceeding approved in *Collier* v. *Merced Irr. Dist.*, 213 Cal. 545 [2 Pac. (2d) 790], the trial court ordered the defendant as part compensation to release and return to the channel a minimum amount of "not less than 475 cubic feet of water per second, whenever conditions of rain and snowfall and storage shall permit", but the court was very patently of the opinion that such requirement did not fully or fairly compensate the plaintiff for the damage done by the defendant in asserting a right to withdraw from the stream a part of its natural flow, and that such compensation would not be complete until $1,000 additional was paid. The finding to this effect is not contrary to or inconsistent with the finding that if defendant' actually releases the stored water in accordance with its proposed plan of operation, and if the stored water so released actually reaches plaintiff's property, plaintiff's lands *"considered solely with reference to physical effects"* (italics ours) will not be injured, but benefited. From a reading and consideration of all the findings together with the italicized words in the last sentence it seems plain to us that the monetary damage was allowed to fairly compensate the plaintiff for the difference in the market value of its property as distinguished from the "physical effect" if the water is released and if it reaches plaintiff's property. The findings being fairly susceptible of such construction are conclusive upon the questions in the absence of the evidence upon which they are based. In fact, we are bound' to assume that the evidence adduced before the trial court sustained the proposition that the difference in market value of plaintiff's lands with the natural flow of the stream and the flow commanded by the court was the sum of $1,000.

■ Defendant likewise complains of that portion of the judgment commanding it to operate its reservoirs in a prescribed manner. It contends that it was error thus to enjoin defendant in the absence of any finding that it intended to operate its reservoirs in any other manner. Defendant cites cases holding, in accordance with well-settled principles of equity, that a plaintiff cannot obtain an injunction against mere fancied wrongs nor against possible wrongful acts which the defendant has never attempted or

threatened to do. (See *International Register Co.* v. *Recording Fare Register Co.*, 151 Fed. 199; *Fackler* v. *Cincinnati etc. Co.*, 229 Ky. 339 [17 S. W. (2d) 194]; *Lorenz* v. *Waldron*, 96 Cal. 243 [31 Pac. 54].) The rule of those cases has no application to the case at bar. In the instant case, the defendant in its answer, as amended to conform to proof, in a special defense to plaintiff's petition for an injunction, set forth in detail its proposed plan of storage and release of the waters, and prayed that the trial court ascertain and determine the respective rights of the parties. The defendant, in effect, asked the trial court to permit it to store the water upon its offer to release the water stored according to a certain plan. The right of plaintiff to compel defendant to release the waters substantially in accordance with this plan, which was granted by the judgment, was given to plaintiff as a part of the compensation for the damage to its riparian rights. This type of award is substantially in accordance with the procedure authorized by this court in *Collier* v. *Merced Irr. Dist., supra.* ■ Moreover, it is a fundamental principle of equity that if circumstances will permit, the equity court will strive to determine the entire controversy and will award full and final relief so as to bring all possible litigation over the subject matter within the compass of one judicial determination. That principle applies with particular force to the instant case. Defendant, having succeeded in limiting the monetary award of $1,000, upon its announced intention to release the water in accordance with a proposed plan, is objecting to the force of the judgment binding it to so release the water, and would remit the plaintiff to a series of separate actions to protect the benefit which defendant offered plaintiff as a means of reducing the monetary compensation. The judgment as rendered was clearly within the powers of the equity court.

The other contentions made by defendant are so unsubstantial as not to require comment. For the foregoing reasons those portions of the judgment appealed from are affirmed.