[L. A. No. 21537. In Bank. Jan. 18, 1952.]

## MRS. SUMNER SPAULDING, Respondent, v. ARTHUR A. CAMERON, Appellant.

Martin H. Easton, James A. Gardner, Overton, Lyman, Prince & Vermille and Donald H. Ford for Appellant.

Samuel A. Rosenthal, Prinzmetal & Grant and Leonard G. Ratner for Respondent.

TRAYNOR, J.—Plaintiff owns and occupies a house on the east side of San Ysidro Drive, Los Angeles, at the bottom of Pea Vine Canyon. Defendant owns approximately 30 acres of land on the west slope of the canyon. In the summer and fall of 1946 defendant undertook leveling operations on his property. These operations consisted of removing the tops of three knolls and casting the earth over the sides of adjoining canyons, forming fills. Approximately one fifth of the earth was pushed over the west side of the Pea Vine Canyon northwest of plaintiff's house. In November of 1946 as a result of heavy rains large quantities of mud washed out of defendant's fill, flowed down the canyon, surrounded plaintiff's house and inundated the garages located on the ground level. Plaintiff brought this action for damages and for injunctive relief. The trial court found that plaintiff's property had suffered physical damage in the amount of $2,732.29, and that its market value had been reduced in the amount of $24,000 because of the continuing threat of future inundations of mud. It entered judgment for damages for both items and also ordered defendant either to remove the fill or to "place protective structures around . . . [it] in such manner that the property of the plaintiff will not be endangered or threatened by the existence of such deposits of loose dirt." Defendant appeals.

It is unnecessary to decide whether in the absence of negligence defendant would be liable for creating on his property an earth fill that presented a continuing threat of injury to the property below. ■ There is evidence that in making the fill defendant did not prepare the natural hillside to hold the dirt he deposited thereon, nor did he make use of available means to compact the earth as it was laid down to prevent it from washing away. Experts testified that proper procedures for making stable fills were not employed. Moreover, defendant was warned during the course of the leveling operations of the hazard being created to the property below. Accordingly, the evidence is sufficient to support the finding that the inundation of plaintiff's property was caused by defendant's negligence in constructing the fill. There is also sufficient evidence to support the finding that the fill constitutes a threat of repetitions of such inundations and will, unless corrected, compel plaintiff to abandon her residence.

■ On the basis of the foregoing findings it is clear that defendant's fill constitutes a nuisance. (Civ. Code, § 3479;

*Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 774, 776 [59 P.2d 473] ; *McIvor* v. *Mercer-Fraser Co.*, 76 Cal.App.2d 247, 254 [172 P.2d 758].) Defendant contends, however, that the trial court erred in allowing damages for the decline in market value of plaintiff's property in addition to damages for the physical injury, particularly in view of the fact that it ordered the abatement of the nuisance, the continuation of which is the cause of the decrease in the market value. Plaintiff, on the other hand, contends that there is in reality no way in which defendant can abate the nuisance and that it was therefore proper for the trial court to award damages caused by the continuing threat of future injury.

In early decisions of this court it was held that it should not be presumed that a nuisance would continue, and damages were not allowed for a decrease in market value caused by the existence of the nuisance but were limited to the actual physical injury suffered before the commencement of the action. (*Hopkins* v. *Western Pac. R. Co.*, 50 Cal. 190, 194; *Severy* v. *Central Pac. R. Co.*, 51 Cal. 194, 197; see, also, *Coats* v. *Atchison T. & S. F. R. Co.*, 1 Cal.App. 441, 444-445 [82 P. 640].) The remedy for a continuing nuisance was either a suit for injunctive relief or successive actions for damages as new injuries occurred. Situations arose, however, where injunctive relief was not appropriate or where successive actions were undesirable either to the plaintiff or the defendant or both. Accordingly, it was recognized that some types of nuisances should be considered permanent, and in such cases recovery of past and anticipated future damages were allowed in one action. (*Eachus* v. *Los Angeles Consol. Elec. Ry. Co.*, 103 Cal. 614, 622 [37 P. 750, 42 Am.St.Rep. 149] ; *Williams* v. *Southern Pac. Co.*, 150 Cal. 624, 626-628 [89 P. 599] ; *Rankin* v. *DeBare*, 205 Cal. 639, 641 [271 P. 1050] ; see McCormick on Damages, § 127, pp. 504-505.)

The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility. Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted. It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not allowed to recover all of his probable damages at once.

(See McCormick, *Damages for Anticipated Injury to Land,* 37 Harv.L.Rev. 574, 584-585.)

A more difficult problem is presented, however, if the defendant is not privileged to continue the nuisance or trespass but its abatement is impractical or the plaintiff is willing that it continue if he can secure full compensation for both past and anticipated future injuries. To attempt categorically to classify such a nuisance as either permanent or not may lead to serious injustice to one or the other of the parties. Thus, if the plaintiff assumes it is not permanent and sues only for past damages, he may be met with the plea of res judicata in a later action for additional injury if the court then decides the nuisance was permanent in character from its inception. (See *Slater* v. *Shell Oil Co.,* 58 Cal.App.2d 864, 870 [137 P.2d 713].) Similarly, if the initial injury is slight and plaintiff delays suit until he has suffered substantial damage and the court then determines that the nuisance was permanent, the defendant may be able to raise the defense that the statute of limitations ran from the time of the initial injury. (See *Phillips* v. *City of Pasadena,* 27 Cal.2d 104, 107-108 [162 P.2d 625].) On the other hand, if the defendant is willing and able to abate the nuisance, it is unfair to award damages on the theory that it will continue. (See *Meek* v. *De Latour,* 2 Cal.App. 261, 265 [83 P. 300]; *cf., Collier* v. *Merced Irr. Dist.,* 213 Cal. 554, 566 [2 P.2d 790]; *Colorado P. Co.* v. *Pacific G. & E. Co.,* 218 Cal. 559, 567 [24 P.2d 495].)

Because of these difficulties it has been recognized that in doubtful cases the plaintiff should have an election to treat the nuisance as either permanent or not. (*Kafka* v. *Bozio,* 191 Cal. 746, 752 [218 P. 753, 29 A.L.R. 833]; see Restatement, Torts, § 930; McCormick on Damages, § 127, p. 511 et seq.; 4 Sutherland on Damages [4th ed.] § 1046, p. 3874.) If the defendant is not privileged to continue the nuisance and is able to abate it, he cannot complain if the plaintiff elects to bring successive actions as damages accrue until abatement takes place. (*Phillips* v. *City of Pasadena,* 27 Cal.2d 104, 107-108 [162 P.2d 625]; *Strong* v. *Sullivan,* 180 Cal. 331, 334-335 [181 P. 59, 4 A.L.R. 343].) On the other hand, if it appears improbable as a practical matter that the nuisance can or will be abated, the plaintiff should not be left to the troublesome remedy of successive actions. (See Restatement, Torts, § 930, com-

ment c; McCormick, *Damages for Anticipated Injury to Land*, 37 Harv.L.Rev. 574, 594-595.)

The facts of the present case aptly illustrate the problem involved. As a result of the nuisance created by defendant, plaintiff's property suffered physical injury. There is also evidence that while the nuisance continues its rental value is impaired, and that if the nuisance is not abated its market value will continue to be substantially depressed. There is evidence that would support the conclusion that there is little or nothing defendant can do to abate the nuisance. On the assumption that this conclusion is correct, plaintiff contends that she is entitled to recover the full diminution in the market value caused by the probable continuation of the nuisance. On the other hand, defendant contends that he can and will abate the nuisance. There is evidence that would support the conclusion that corrective measures taken by defendant will prevent further flows of mud. Moreover, since defendant intends to make use of the top surface of the fill it is not improbable that he will do whatever is practically possible to stabilize it. On the assumption that he has or will be able to abate the nuisance defendant contends that plaintiff's damages should be limited to those suffered in the past and should not include speculative future losses based on the assumption that the nuisance will continue.

█ The findings and conclusions of the trial court on these conflicting contentions are inconsistent. The court found that plaintiff's property had been permanently damaged because of the continuing threat of future injury. It also found, however, that this threat would continue unless corrective measures were taken, and by ordering that such measures be taken impliedly found that they were feasible. It is clear that plaintiff cannot have both remedies. If defendant obeys the injunction and takes such measures that ''the property of the plaintiff will not be endangered or threatened by the existence of such deposits of loose dirt,'' there will no longer be a threat to depreciate the value of the property. Plaintiff would obtain a double recovery if she could recover for the depreciation in value and also have the cause of that depreciation removed.

A similar problem was presented in *Meek* v. *De Latour*, 2 Cal.App. 261 [83 P. 300]. In that case plaintiff secured a judgment ordering the abatement of a cream of tartar factory and awarding damages. In compliance with the

judgment the factory was removed and on appeal it was held that evidence of the decrease in market value caused by its presence was inadmissible. "It seems perfectly clear that such testimony . . ., where the abatement of a nuisance is sought, is inadmissible on the question of damages. Otherwise a plaintiff could recover for the depreciation in value of his property and at the same time remove the depreciation by abating the cause of it." (2 Cal.App. at 265.)

In the present case it cannot be said as a matter of law that the nuisance can or cannot be abated. In view of the inconsistent findings and the conflict in the evidence, it would be inappropriate for this court to determine whether the nuisance is in fact permanent and to modify the judgment by striking the damages for loss of market value on the assumption it is not permanent, or by striking the injunctive provisions on the assumption that it is. (*Tupman* v. *Haberkern,* 208 Cal. 256, 269-270 [280 P. 970].)

Since plaintiff has proved defendant's liability for the actual physical injury to the property the judgment should be affirmed to the extent that it awards $2,732.29 damages for that injury. To the extent that the judgment awards additional damages and also grants injunctive relief it must be reversed. On retrial the trial court should determine whether or not the nuisance is in fact permanent. If it finds that it is, it should enter judgment for the decrease in market value. If it finds that it is not, it should grant injunctive relief and such additional damages as may be proved for the temporary decrease in the value of the use of the property while the nuisance continued. (See *Bourdieu* v. *Seaboard Oil Corp.,* 48 Cal.App.2d 429, 437-438 [119 P.2d 973]; *Guttinger* v. *Calaveras Cement Co.,* 105 Cal.App.2d 382, 387 [233 P.2d 914]; McCormick on Damages, § 127, pp. 503-504.)

To the extent that it awards damages of $2,732.29 the judgment is affirmed. In all other respects the judgment is reversed and the cause is remanded to the trial court with instructions to determine on the basis of the evidence previously presented and such additional evidence as may be presented by the parties whether or not the nuisance is in fact permanent. Each party is to bear his own costs on this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—1 dissent.

I am of the opinion that the portion of the judgment for damages should be affirmed and the injunctive feature either amended or affirmed as correctly construed.

In this case the defendant negligently maintained loose dirt on his land which has in the past, when it rained, moved onto plaintiff's land. The court *expressly* found that such condition existing on defendant's land permanently depreciated the market value of plaintiff's land as follows: ". . . by reason of the acts of the defendant . . . plaintiff's property has suffered a substantial and *permanent impairment* of value and *has lost* its desirability as a residence for plaintiff, or any prospective purchasers; that it is true that the fair market value of the house on plaintiff's property before the deposit of the loose dirt, and the damage occasioned thereby, was the sum of $40,000.00, and that the fair resale value of said house after the damage caused by the defendant . . . was the sum of $16,000.00, to plaintiff's detriment and damage in the sum of $24,000.00, and it is true that the maintenance by the defendant . . . of the loose quantities of dirt on his premises will cause plaintiff great and *irreparable* injury and will *permanently* deprive plaintiff's land of *any* value for residential purposes." (Italics added.) It is conceded by the majority that that finding is supported by the evidence. The majority opinion says, however, that there is an inconsistent finding to the effect that the condition on defendant's land is not permanent—can be abated. There is no *express* finding to that effect. Assuming there is an implied finding flowing from the fact that an injunction was given, then the duty of this court is to liberally construe the findings to support the part of the judgment based upon such findings, rather than reversing the entire judgment. Thus the implied inconsistent finding that the condition can be abated may be ignored, and the part of the judgment awarding injunctive relief reversed, while affirming the damage portion which is based on an *express* finding of permanent damage. In line with the settled rule that findings must be liberally construed to support the judgment and specific findings control over general ones (24 Cal.Jur. 1007 et seq.) an express finding prevails over an implied one. (See *Central H. Imp. Co.* v. *Memorial Parks, Inc.*, 40 Cal.App.2d 591 [105 P.2d 596].)

It is not necessary, however, to reverse the injunctive provision in the judgment, for correctly construed, under the

rule requiring liberal construction to support it, there is no inconsistency. So interpreted, it enjoins only the maintenance in the future by defendant on his land of *additional* loose soil, that is, in addition to what is already there. The findings are readily susceptible of that construction. It is found that "Plaintiff is entitled to a permanent restraining order against the defendant, enjoining . . . defendant . . . from *excavating, re-surfacing* or *distributing* his said land and depositing loose dirt in any manner which *may* threaten or endanger the residence of the plaintiff, and ordering the defendant . . . to remove deposits of loose dirt upon his said land, or in lieu thereof, to place protecting structures around said loose dirt in such a manner that the property of the plaintiff will not be endangered or threatened by the existence of deposits of loose dirt." (Italics added.) It will be noted that the participle form of the verbs "excavate, re-surface or distribute" speak in the future. It could not be speaking of the past because that soil had already been excavated and distributed. The removal of the dirt being in the same tenor, refers to the dirt to be distributed in the future, after the entry of the judgment. It is true that the judgment also refers to the removal of dirt theretofore deposited. That portion of the judgment is out of harmony with the findings and should be modified.

I would therefore modify the judgment with respect to injunctive relief against dirt already deposited on defendant's land and affirm the judgment as so modified.

The opinion and judgment were modified to read as above printed and respondent's petition for a rehearing was denied February 14, 1952. Carter, J., was of the opinion that the petition should be granted.