[No. E040071. Fourth Dist., Div. Two. Sept. 25, 2007.]

GARY BAILEY, Plaintiff and Appellant, v.
OUTDOOR MEDIA GROUP et al., Defendants and Respondents.

**COUNSEL**

Wildish & Nialis, Daniel R. Wildish, Stephen A. Rains and N. Ramsey Barcik for Plaintiff and Appellant.

Baute & Tidus, Jeffrey A. Tidus and Henry H. Gonzalez for Defendants and Respondents Jon M. Gunderson and Outdoor Media Group.

Gresham Savage Nolan & Tilden, Theodore K. Stream, Eugene Kim and Jaime N. Ries for Defendant and Respondent Lamar Advertising Company.

**OPINION**

**McKINSTER, Acting P. J.**—This is an appeal by plaintiff and appellant, Gary Bailey (Bailey), from the judgment entered on November 29, 2005, in his favor and against defendants and respondents, Outdoor Media Group (OMG), Jon M. Gunderson, and Lamar Advertising Company (Lamar), following a court trial on Bailey's complaint for, among other things, damages based on trespass, wrongful occupation of land, and a common

count for money had and received. The trial court awarded Bailey compensatory damages of $108,069 against OMG and Jon M. Gunderson, its principal, and an additional $86,131 against Lamar, on the noted causes of action. Bailey challenges the damage awards, contending that the trial court did not apply the correct statutory measure of damages with respect to Lamar, and failed to correctly calculate damages with respect to OMG. We agree with Bailey's claim regarding Lamar, for reasons we now explain, and therefore we will modify the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Bailey sued OMG and Lamar, both of which are billboard advertising companies, to recover damages for trespass and wrongful occupation of a strip of land in the City of Grand Terrace that Bailey had leased from the property owners and then subleased to OMG, which constructed billboards on the land and sold the advertising space. When OMG's 10-year sublease with Bailey expired in 1998, OMG continued to occupy the land and sell advertising on its billboards while it attempted to negotiate a new sublease agreement with Bailey. Bailey and OMG did not agree on the terms of a new sublease, and in 1999 Bailey sued OMG for damages based on, among other things, its wrongful occupation of Bailey's leasehold. Bailey won that lawsuit (which the parties in this case refer to as *Bailey I*, a designation we adopt),[2] and recovered damages from OMG through August 2001. Although the trial court in that case awarded Bailey damages, it denied Bailey's cause of action for ejectment on the ground that ejectment could result in waste because the City of Grand Terrace had outlawed new billboard construction with the result that if the billboards were removed from the property, they could not be replaced. Bailey appealed the damage award in *Bailey I*,[3] but he apparently did not challenge the trial court's denial of his request to eject OMG from the property. In that appeal, this court modified the judgment by increasing the damage award and affirmed the judgment as modified. Despite its loss in *Bailey I*, both at trial and on appeal, OMG continued to occupy Bailey's property and sell advertising space on its billboards until May 2003, when it sold the billboards to Lamar.

In the sale to Lamar, OMG represented that it had a valid sublease with Bailey on the subject property and that it would assign that sublease to Lamar. OMG provided Lamar with a copy of what OMG represented to be the sublease agreement. The purported sublease in fact was an offer that Bailey had made to OMG nine months earlier and that OMG had not

---

[1] Because the pertinent facts are undisputed, we take our statement of facts from the parties' respective briefs.

[2] *Bailey v. Outdoor Media Group* (Super. Ct. Riverside County, 2001, No. RIC325716).

[3] *Bailey v. Outdoor Media Group* (Dec. 9, 2002, E030836) (nonpub. opn.).

accepted and that Bailey subsequently revoked. Because Bailey had signed the sublease offer, OMG backdated its acceptance, and represented to Lamar that the document was a valid sublease agreement with Bailey.[4] When Bailey learned of the transaction between OMG and Lamar, which occurred shortly after the transaction took place, he notified Lamar that OMG did not have a sublease on the property. In addition, when Lamar sent Bailey what it represented to be its first rent payment, Bailey returned the check, and advised Lamar that no sublease existed between Bailey and OMG. Lamar continued to occupy the property and send monthly rent payments to Bailey, only to have Bailey return the payments with a letter advising Lamar that OMG did not have a lease on the property.

Bailey filed the instant action in July 2003, seeking among other things damages under Civil Code section 3334 for trespass measured by the gross revenue Lamar and OMG received from their respective sale of advertising space on the billboards located on Bailey's leasehold. Bailey also sought to recover from OMG the price Lamar had paid to purchase the billboards from OMG. A court trial took place in March 2005 at the conclusion of which the trial court found in favor of Bailey and against both OMG and Lamar. The trial court awarded damages to Bailey against OMG measured by the net profit it generated from the billboards ($108,069), rather than by gross revenue ($168,850), and against Lamar measured by the reasonable rental value of the land ($86,131), rather than its net profit ($99,580.64). The trial court denied Bailey recovery of the purchase price OMG had received from Lamar, and also found that Bailey was collaterally estopped by *Bailey I* from seeking ejectment, and in any event, ejectment would cause waste. After the trial court issued its tentative decision, Bailey moved for a new trial on the issue of damages or in the alternative to vacate the submission and reopen the case to evidence. The trial court denied that motion. Bailey appeals from the subsequently entered judgment.

## DISCUSSION

Bailey contends that the trial court incorrectly calculated the amount of damages to which he is entitled as the result of the wrongful occupation of his leasehold by OMG and Lamar. More particularly, Bailey claims that under Civil Code section 3334, he was entitled to recover the "benefits obtained" by both OMG and Lamar as a result of their respective wrongful occupations of

---

[4] OMG made a motion to augment the record on appeal in *Bailey I* to include the fabricated sublease.

Bailey's leasehold, and that the benefit obtained consists of the gross revenue, not the net profit, generated by the billboards, along with the proceeds of OMG's sale of the billboards to Lamar. Although the trial court awarded Bailey the value of the use of the property measured by the benefits OMG obtained as a result of its wrongful occupation of Bailey's leasehold, it determined that those benefits consisted of the profit OMG made on the billboards rather than its gross revenue, and did not include the proceeds of OMG's sale to Lamar. With respect to Lamar, the trial court found that its occupation of the property was the result of a mistake of fact, and therefore the trial court assessed damages under Civil Code section 3334, subdivision (b)(2), quoted below, based on the reasonable rental value of the property, an award Bailey also challenges. We first address Bailey's claim regarding the damage award against OMG, which turns on the meaning of the phrase "benefits obtained" as used in Civil Code section 3334.

### 1.

### MEASURE OF DAMAGES UNDER CIVIL CODE SECTION 3334

Civil Code section 3334[5] provides in pertinent part: "(a) The detriment caused by the wrongful occupation of real property . . . is deemed to include the value of the use of the property for the time of that wrongful occupation, . . . the reasonable cost of repair or restoration of the property to its original condition, and the costs, if any, of recovering the possession. [¶] (b)(1) Except as provided in paragraph (2), for purposes of subdivision (a), the value of the use of the property shall be the greater of the reasonable rental value of that property or the benefits obtained by the person wrongfully occupying the property by reason of that wrongful occupation. [¶] (2) If a wrongful occupation of real property subject to this section is the result of a mistake of fact of the wrongful occupier, the value of the use of the property, for purposes of subdivision (a), shall be the reasonable rental value of the property."

The phrase "benefits obtained" is not defined in section 3334. By urging that it means gross rather than net revenue, Bailey contends either that his interpretation is required as a matter of law, or that application of the trial court's interpretation is not supported by substantial evidence. We first address the assertion that "benefits obtained" means gross revenue as a matter of law because that assertion, if correct, renders the alternate claim moot.

---

[5] All further statutory references are to the Civil Code unless indicated otherwise.

At the outset, we note that we did not resolve this issue in *Bailey I* because the trial court in that case awarded Bailey damages under section 3334 based on the reasonable rental value of the property and rejected Bailey's claim that damages should be based on the benefit OMG obtained by its wrongful occupation of the property. We reversed, and held that damages should be measured by the benefit OMG obtained, which we concluded was the gross revenue generated by its sale of advertising space on the billboards because that amount was greater than the reasonable rental value of the property. We based that holding, in part, on the language of section 3334, and, in part, on the fact that OMG had not presented any evidence regarding the expenses it incurred in connection with the operation of the signs, and therefore its net income (or profit) could not be calculated. In this case, OMG did present evidence of the expenses it incurred. Therefore, the trial court found that the benefit OMG received was its profit from the sale of advertising space on the billboards.

■ Resolution of Bailey's claim in this appeal that, as used in section 3334, the phrase "benefits obtained" means gross revenue requires us to construe, or interpret, section 3334. Statutory interpretation is a question of law, which we conduct de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].) In determining statutory construction we begin with the well-settled principle that the objective of the endeavor is to determine and give effect to the Legislature's purpose in enacting the statute in question. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

■ Only two cases have discussed the "benefits obtained" provision of section 3334, subdivision (b)(1), neither of which involves the specific issue presented in this appeal, but which both conclude that the phrase includes any financial benefit obtained as a result of the trespass. In the recently decided *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583 [63 Cal.Rptr.3d 165] (*Starrh*), the issue was whether "benefits obtained" was limited to the cost the defendant saved, or did not incur, as a result of the wrongful trespass, such as the cost of properly disposing of the wastewater at issue in that case. On appeal, the Fifth District held, in pertinent part, that damages under the benefits obtained provision are not so limited and may include profits the trespasser generated "that are directly linked to the wrongful trespass." (*Starrh*, at p. 604.)

In *Watson Land Co. v. Shell Oil Co.* (2005) 130 Cal.App.4th 69 [29 Cal.Rptr.3d 343] (*Watson*), the issue was whether "benefits obtained" included restoration or remediation costs that were paid by a codefendant and therefore were avoided by the trespasser. Division Two of the Second District held that benefits obtained do not include "the avoidance of remediation costs" because remediation is a separate component of the damages specified in subdivision (a) of section 3334. "If 'benefits' included the cost of remediation (and the value of the use of the money saved, as [the plaintiff] suggests), then the language permitting recovery of 'the reasonable cost of repair or restoration' would be surplusage. (Civ. Code, § 3334, subd. (a).)" (*Watson*, at p. 78.)

Both *Starrh* and *Watson* based their interpretations on the Legislature's intent as evidenced by the legislative history of section 3334. That history reveals that before 1992, section 3334 stated, in pertinent part, that, "The detriment caused by the wrongful occupation of real property . . . is deemed to be the value of the use of the property for the time of such occupation." (Stats. 1979, ch. 373, § 47, p. 1264.) In 1992, the Legislature amended the section, first, by designating the above quoted language as subdivision (a) and, next, by adding to that language that the detriment "is deemed to include the value of the use of the property for the time of that wrongful occupation, . . . the reasonable cost of repair or restoration of the property to its original condition, and the costs, if any, of recovering the possession." (§ 3334, subd. (a), as amended by Stats. 1992, ch. 469, § 1, p. 1847.) The 1992 amendment also added subdivision (b), which specifically defines "the value of the use of the property" to mean "the greater of the reasonable rental value of that property or the benefits obtained by the person wrongfully occupying the property," and that the value of the use of the property is the reasonable rental value if the wrongful occupation is the result of a "mistake of fact" on the part of the wrongful occupier. (§ 3334, subd. (b), as amended by Stats. 1992, ch. 469, § 1, pp. 1847–1848.)

The 1992 amendment was sponsored by a resolution of the Conference of Delegates of the California State Bar Association. Its author explained in a letter to the State Bar's legislative counsel "that the resolution 'provides a definition for the "value of the use" which eliminates Section 3334's economic incentive to dump' toxic waste when the rental value [of the property on which the waste is dumped] is cheaper than the cost of disposal. 'The "value of the use" would be "the greater of the reasonable rental value or the benefits obtained by the trespasser by reason of the trespass." The measure of damages would take into account the benefit obtained by the trespass—the cost saved by not properly disposing the pollutants.' " (*Watson, supra,* 130

Cal.App.4th at p. 78.) The State Bar resolution prompted Assembly Bill No. 2663 (1991–1992 Reg. Sess.) pursuant to which section 3334 was amended in 1992. (See *Watson, supra,* at p. 79.)

The legislative history "demonstrates that the Legislature intended to eliminate financial incentives for trespass by eradicating the benefit associated with the wrongful use of another's land." (*Watson, supra,* 130 Cal.App.4th at p. 79.) The amendment "created not only a measure of damages for the property owner, but an economic disincentive to [the] would-be polluters." (*Starrh, supra,* 153 Cal.App.4th at p. 603.)

In this case, OMG wrongfully occupied Bailey's leasehold in order to conduct a business enterprise on the property, i.e., to sell advertising space on billboards. The financial incentive for operating such a business is to generate profit. Bailey argues that gross revenue is the financial disincentive or the benefit obtained in such a situation. To support that claim, Bailey relies on *Starrh,* for the general, and unremarkable, proposition that section 3334 should not be read narrowly given the Legislature's intent in enacting the statute. As previously discussed, *Starrh* held that "benefits obtained" includes profits the trespasser "enjoyed . . . that are directly linked to the wrongful trespass." (*Starrh, supra,* 153 Cal.App.4th at p. 604.) *Starrh* does not address gross revenue.

Bailey also cites cases involving the wrongful extraction of minerals in which damages are measured according to a "harsh rule," applied when the misappropriation is willful, or a "mild rule," which is applied when the extraction is unintentional or a mistake. (See *Whittaker v. Otto* (1967) 248 Cal.App.2d 666, 675 [56 Cal.Rptr. 836].) "Under this 'mild' rule, the measure of damages is the value of the ore extracted less the costs incurred by the defendants in the mining, transportation, and smelting of the converted ore, [citations], since this constitutes the value of the ore in place." (*Id.* at p. 675.) Under the "harsh" rule, the measure of damages is the value of the ore without deductions for the previously noted costs of production, what the *Whittaker* court describes as "the net value of the ore converted without deduction for defendant's cost of mining, transportation, and smelting."[6] (*Whittaker v. Otto, supra,* at pp. 675–676.) Bailey argues that like the cited cases, when the defendant's wrongful occupation is intentional, as in this case, the benefit obtained should be the harsh measure of damages and that harsh measure is gross revenue.

---

[6] Use of the term "net" to describe the value of the ore before deducting expenses is either wrong or a usage unique to the mining industry.

As set out above, section 3334, subdivision (b) specifies the "mild" measure of damage that applies when the trespass is the result of a mistake of fact, and therefore is unintentional or inadvertent. In that situation damages are measured by the reasonable rental value of the property. (See § 3334, subd. (b)(2).) Therefore, the mining cases do not aid our analysis because they do not necessarily exclude net income as the measure of damages to calculate the benefit obtained.

Bailey also relies on *A & M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554 [142 Cal.Rptr. 390], a case in which the trial court imposed a constructive trust on the gross receipts the defendants received as a result of their misappropriation and sale of pirated music recordings. In affirming both the damage award and the remedy, the Court of Appeal noted that the defendants' conduct amounted to conversion of the plaintiff's intangible personal property, and cited the rule that, "One who misappropriates the property of another is not entitled to deduct any of the costs of the transactions by which he accomplished his wrongful conduct." (*Id.* at p. 570.) The court also noted a separate reason for not allowing the defendants to deduct expenses—they had not met their burden to produce evidence of the costs they had incurred, and therefore "it was impossible to verify their alleged expenses." (*Ibid.*, fn. 11.)

OMG did not misappropriate and sell Bailey's leasehold; it wrongfully occupied it and then enabled Lamar to wrongfully occupy it. In other words, OMG did not represent that it was the sublessor and on that basis collect rent from Lamar for its use and occupation of Bailey's leasehold. Until section 3334 was amended in 1992, the damages recoverable for the wrongful use of real property belonging to another were measured by the reasonable rental value of the property. By amending section 3334 to include the "benefits obtained" as a measure of damages, the Legislature did not intend to punish the wrongful occupier. The legislative history, recounted above, indicates that the purpose of the amendment was to discourage the dumping of toxic waste on vacant land with little or no rental value by eliminating the financial benefit gained by that dumping.

Bailey's contrary view notwithstanding, a person or business entity is not likely to wrongfully occupy land and operate a business merely in order to break even at the end of the effort. Our conclusion that the profit OMG generated while wrongfully occupying Bailey's property is the benefit it obtained is consistent with the Legislature's intent in enacting section 3334. In other words, we cannot say that, as a matter of law, and without regard to

any other circumstance, the benefit obtained is necessarily and in all instances the gross revenue generated by a trespassing business enterprise. In reaching this conclusion, we do not place the burden on Bailey to prove OMG's profit. We hold only that when, as in this case, the defendant presents credible evidence of the expenses it incurred, the trial court may offset those expenses against the gross income generated and award the profit as the benefit obtained under section 3334. Conversely, when the trespassing defendant does not present such evidence, a trial court may award damages based on gross revenue as the benefit obtained by the wrongful occupation of land for the purpose of operating a business.

## 2.

## DAMAGES RECOVERABLE FROM OMG

### A. OMG's Net Profit on Billboard Leases

Because we cannot say as a matter of law that "benefits obtained" means gross revenue, we cannot say that the trial court erred in this case by awarding Bailey damages against OMG based on the net revenue, or profit, generated by its wrongful occupation of Bailey's leasehold interest. Nor do we agree with Bailey's assertion that even if not correct as a matter of law, gross revenue should be the measure of the benefit obtained in this case given OMG's outrageous conduct. In other words, Bailey contends we should conclude that a punitive measure of damages is warranted under the facts of this case. As discussed above, the legislative history of section 3334 does not support an interpretation that the "benefits obtained" measure of damages is intended to punish the wrongful occupier. But even if a punitive interpretation were appropriate under certain circumstances, the trial court in this case denied Bailey's request for punitive damages, and in doing so effectively resolved the factual issue underlying Bailey's argument. In another case, the facts might support a trial court's award of gross revenue as the benefit obtained as a result of the wrongful occupation of property. However, the trial court in this case found otherwise, and we must affirm that finding because it is supported by substantial evidence. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 51 [26 Cal.Rptr.2d 834, 865 P.2d 633].)

Our conclusion that the phrase "benefits obtained" as used in section 3334, subdivision (b)(1) means net revenue or profit, and OMG presented evidence

to show its net profit, evidence that Bailey does not challenge on appeal, requires us to affirm this aspect of the damage award. The remaining issue is whether the proceeds of OMG's sale of the billboards to Lamar are also benefits OMG obtained as a result of its wrongful occupation of Bailey's property.

## B. Proceeds of OMG's Sale to Lamar

Bailey claimed in the trial court, as he does on appeal, that the proceeds from OMG's sale of the billboards to Lamar are a benefit obtained by OMG "by reason of" its wrongful occupation of Bailey's leasehold, and as such should have been included in the damages the trial court awarded to Bailey. The trial court found that the proceeds of the sale were not a benefit obtained "by reason of" OMG's occupation of Bailey's land but rather as a result of OMG's fraudulent representation to Lamar that it had a valid leasehold interest in the property that it could assign to Lamar. In other words, the trial court found there was no causal connection between OMG's wrongful occupation of land and the benefit obtained. We agree with the trial court.

Because the pertinent facts are undisputed, we may resolve the causation issue as a question of law. (See *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864 [64 Cal.Rptr.2d 324] [although causation generally presents a question of fact, it becomes a question of law when a facts are undisputed and "there is no room for a reasonable difference of opinion"].)

There was no causal connection between OMG's wrongful occupation of Bailey's leasehold and Lamar's willingness to purchase OMG's billboards. Lamar's interest in purchasing the billboards was the result of OMG's representation that it had the right to keep the billboards in place on Bailey's leasehold until 2008, when the purported sublease expired. Lamar not only purchased the billboard structures but also OMG's future right to occupy Bailey's leasehold. Therefore, the purchase price OMG received from Lamar was not a benefit obtained "by reason of" OMG's wrongful occupation of Bailey's leasehold. Rather, the purchase price was a benefit OMG obtained as a result of its wrongful representation that it had the right to occupy the leasehold in the future and therefore could assign that right to Lamar.

OMG's misrepresentation to Lamar regarding its right to occupy Bailey's property most likely increased the value of the billboards and presumably

affected the price Lamar paid OMG. If Lamar paid more for the billboards than they were worth because of OMG's misrepresentation, that is a matter for Lamar to resolve with OMG. Bailey is not entitled to the proceeds of OMG's sale of the billboards to Lamar because those proceeds are not a benefit OMG received by reason of its wrongful occupation of the property. Accordingly, and for the reasons discussed above, we will affirm the damage award against OMG.

### 3.

## DAMAGES RECOVERABLE FROM LAMAR

The trial court found that Bailey could only recover damages against Lamar measured by the reasonable rental value of the property, as specified in section 3334, subdivision (b)(2), because Bailey was equitably estopped from applying the "benefits obtained" measure of damages against Lamar, and in any event Lamar's occupancy of the property was the result of a mistake of fact, that fact being Lamar's belief that OMG had a valid sublease agreement with Bailey that OMG, in turn, had assigned to Lamar. Bailey challenges both findings on various grounds. We agree with his assertion that the trial court incorrectly found that Bailey was equitably estopped from claiming damages under the "benefits obtained" measure of damages because the evidence is insufficient to support application of the doctrine.

### A. Equitable Estoppel

"Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' [Citations.] The doctrine is defensive in nature only, and 'operates to prevent one [party] from taking an unfair advantage of another.' [Citation.] Whether there is an estoppel is chiefly a question of fact. [Citation.] There must be (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts, (3) to a party ignorant, actually and permissibly, of the truth, (4) with the intent, actual or virtual, that the latter act upon it, and (5) the party must have been induced to act upon it. [Citation.]" (*San Diego Mun. Credit Union v. Smith* (1986) 176 Cal.App.3d 919, 922–923 [222 Cal.Rptr. 467], citing, among other things, Evid. Code, § 623; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351, 5352.)

The trial court found with respect to Lamar that Bailey was "equitably estopped from utilizing the 'benefits obtained' measure of damages under Section 3334. [Bailey] sent countless letters to Lamar, returning their rent checks and pointing out that no lease existed, but never asked them to take down the advertising from the billboards, or to remove the billboards. [Bailey] testified that he wanted to negotiate a lease [with Lamar] but it was clear from the evidence that he made it impossible to negotiate by demanding various amounts at various times, and that he sometimes made demands that were well beyond any reasonable range. He often made it a condition of settlement that OMG or Jon Gunderson take steps that were not within Lamar's power to control. Based upon this conduct . . . Bailey is limited to reasonable rental value with respect to Lamar."

■ Assuming equitable estoppel applies to prohibit application of the statutory measure of damages, the evidence in this case does not establish a basis for invoking the doctrine. As set out above, the critical circumstance that warrants application of the doctrine of equitable estoppel is that the party invoking the doctrine was induced to act upon a representation or concealment made by the other party. (*San Diego Mun. Credit Union v. Smith, supra,* 176 Cal.App.3d at p. 923.) The evidence presented in the trial court does not establish this critical aspect of equitable estoppel. In the trial court's apparent view, Bailey induced Lamar to remain on the property as evidenced by the fact that Bailey did not ask Lamar to vacate the premises or to stop selling advertising on the billboards, and also continued to engage in lease negotiations with Lamar. A trespasser remains in possession of the property at its peril. In other words, if Lamar wanted to reduce its liability to Bailey, it should have vacated the property. Lamar chose to remain in possession and continue to negotiate with Bailey, despite his apparently outrageous demands. Stated bluntly, Bailey was in the catbird seat, and given his superior position, Lamar remained in possession of the property at peril of ultimately being held liable for damages measured under section 3334 by the benefits obtained by reason of its wrongful occupancy.

It also occurs to us that if Bailey had demanded Lamar vacate the premises and/or remove the billboards, Lamar would have invoked the judgment in *Bailey I* in which the trial court, as previously noted, refused to order ejectment. OMG and Lamar construed that ruling to mean that their presence on the property constituted a permanent trespass, which in turn required Bailey to seek damages in *Bailey I* for the duration of his leasehold or be foreclosed from recovering such damages in the future.[7] The trial court in this case rejected that assertion and instead found "the trespass to be continuing in

---

[7] OMG asserts this argument on appeal, albeit in the context of arguing that Bailey was not entitled to any recovery in this case. If OMG raised this assertion in the trial court it was rejected and Bailey has not filed a cross-appeal. Therefore we need not address the claim.

nature. [Bailey] cannot be faulted for failing to elect his remedy; in *Bailey I* he sought ejectment as well as damages, but the court denied ejectment in order to prevent waste. Moreover, the court in *Bailey I* was in no position to award [Bailey] future damages for ongoing trespass, because no one knew at the time of that judgment whether [OMG and Lamar] would continue to occupy the premises (since not ejected), and if so, whether they would pay [Bailey] for such occupation." As the quoted ruling indicates, the trial court in this case, as well as OMG and Lamar, construed the judgment in *Bailey I* as creating a right on behalf of Lamar and OMG to occupy Bailey's leasehold interest. Given that interpretation of the *Bailey I* judgment, any demand Bailey might have made that Lamar vacate the premises would have been futile, and the trial court cannot fault Bailey for failing to make a futile demand.

In summary, we conclude, assuming without actually deciding the doctrine applies, that the evidence does not support the trial court's finding that Bailey is equitably estopped from seeking damages under section 3334, subdivision (b)(1) based on the benefits Lamar obtained by reason of its wrongful occupation of Bailey's leasehold. Therefore, we next must determine whether the trial court correctly found that Lamar's occupancy of the property was the result of a mistake of fact within the meaning of section 3334, subdivision (b)(2).

### B. Mistake of Fact—Effect of Lis Pendens

At the hearing on Bailey's motion for new trial, the trial court stated that its "one regret" with respect to its statement of decision was that the court "didn't expressly say that there was a mistake of fact. It was a mistake of fact induced by OMG claiming that that one lease was valid and fooling Lamar. And there was a mistake of fact." That mistake of fact constituted a separate basis for measuring damages by the reasonable rental value of the property rather than by the benefits Lamar obtained from its wrongful occupancy of the property. Although quoted previously, it bears repeating that under section 3334, subdivision (b)(2), if the wrongful occupation of real property "is the result of a mistake of fact of the wrongful occupier, the value of the use of the property . . . shall be the reasonable rental value of the property." (§ 3334, subd. (b)(2).)

■ Section 3334, subdivision (b)(2) does not define the phrase "mistake of fact." In the trial court Bailey argued that the definition set out in section 1577 should apply. That definition, which pertains to contract formation and

defines a mistake of fact that serves to vitiate consent to a contract, states in pertinent part that a mistake of fact is a mistake "not caused by the neglect of a legal duty on the part of the person making the mistake . . . ." (§ 1577.) Bailey argued that Lamar's mistake of fact was a result of its neglect of its legal duty to conduct a title search which would have revealed a lis pendens on the property. The trial court rejected that argument based on its view that *Bailey I* and this litigation did not involve "real-estate transactions," and therefore were not the proper subjects of a lis pendens. We held in *Parker v. Superior Court* (1970) 9 Cal.App.3d 397 [88 Cal.Rptr. 352], that a leasehold is "an estate in land, an estate in real property" and an action involving such an estate is properly the subject of a lis pendens. (*Id.* at p. 400.) Because *Bailey I* involved a dispute over a leasehold, it was the proper subject of a lis pendens. Accordingly, we next address the effect that lis pendens had on Lamar's claim that it occupied the leasehold as a result of a mistake of fact.

Lamar's representative testified at trial, in pertinent part, that Lamar does not conduct title searches on the properties it leases for its billboards, it did not conduct such a search in this case, and it did not have actual knowledge of any problem regarding the OMG billboards at issue in this case. In other words, Lamar claimed that it did not have actual knowledge of the litigation between Bailey and OMG and did not have any reason to question the validity of the sublease between OMG and Bailey that OMG purported to assign to Lamar.[8]

Although Bailey argued in the trial court that Lamar had a legal duty to investigate the status of OMG's interest in the real property by among other things conducting a title search, that argument misconstrues the effect of a lis pendens. " 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice.' [Citation.]" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 [15 Cal.Rptr.3d 805, 93 P.3d 395].) "From the time of recording the notice of pendency of action, a purchaser, encumbrancer, or other transferee of the real property described in the notice shall be deemed to have constructive notice of the pendency of the noticed action as it relates to the real property . . . ." (Code Civ. Proc., § 405.24.) In other

---

[8] In this appeal, Lamar contends that it "did not have actual knowledge of Bailey's interest in the property." That assertion cannot be true since Lamar was the assignee of the purported sublease between Bailey, as the sublessor, and OMG, the sublessee. Because Lamar knew that Bailey had an interest in the property as sublessor to OMG, the only fact about which Lamar arguably could claim ignorance is the validity of that sublease.

words, whether Lamar had a duty to conduct a title search is irrelevant because according to the quoted statute, Lamar as the purported transferee of OMG's leasehold interest is deemed to know what it would have discovered had it conducted such a search.

Because Bailey recorded a lis pendens in *Bailey I*, Lamar is "deemed to have constructive notice" of that action, and thus of the dispute between Bailey and OMG over OMG's right to possess the property that is the subject of the purported sublease. The amended judgment in *Bailey I*, which established that OMG did not have a valid lease on the property, was filed in March 2003, two months before Lamar purchased OMG's interest in the leasehold and billboards. Because Lamar had constructive notice of *Bailey I* as a result of the lis pendens, its occupancy of that leasehold could not have been the result of a mistake of fact regarding the validity of the sublease between OMG and Bailey.

In reaching this conclusion we reject Lamar's assertion that constructive notice is not sufficient. According to Lamar, "Whether a mistake of fact has been made depends exclusively on the actual, subjective knowledge of the person." Lamar asserts that its view is based on "California case law" which holds that "there is a mistake of fact when a person understands the facts to be other than they are," and the exception set out in section 1577 when the mistake is the result of neglect of a legal duty does not apply to section 3334. In other words, Lamar contends that a mistake of fact exists under section 3334 even when a trespasser deliberately ignores information that would have revealed the true facts. Under Lamar's view, a trespasser who chose to not read posted signs identifying the property owner could claim a mistake of fact regarding the owner's interest in the real property and be liable only for the fair rental value of the property. Clearly that is not the law in California. More significantly, the interpretation urged by Lamar would run afoul of the purpose of the 1992 amendment to section 3334, which as previously discussed was to eliminate the financial incentive for dumping toxic material on property owned by another. The trespasser could avoid paying damages based on the benefit obtained and instead pay only the fair rental value of the property by claiming a mistaken belief regarding ownership of the real property and/or the trespasser's permission to use that property as a disposal site.

Lamar does not cite any authority to support the view that lack of actual knowledge, unencumbered by any duty to investigate, is all that is required in order to establish a mistake of fact under section 3334, subdivision (b)(2). The cases Lamar cites do not support its view. *Walton v. Bank of California* (1963) 218 Cal.App.2d 527 [32 Cal.Rptr. 856], involves an action to rescind an irrevocable inter vivos trust based on a claim of mistake by the trustor

regarding the specific tax consequences of the transfer. In addressing the mistake, the court noted that, "Generally speaking, there is a mistake of fact when a person understands the facts to be other than they are. [Citations.]" (*Id.* at p. 543.) *Reid v. Landon* (1958) 166 Cal.App.2d 476 [333 P.2d 432], one of the cases cited by the court in *Walton v. Bank of California* to support the quoted phrase, is the second case Lamar cites to support its claim and also is a rescission action, this one to rescind an option to purchase real property that the property owner signed based on her belief that the document created only a right of first refusal. Neither case supports Lamar's claim that only lack of actual knowledge is sufficient to establish a mistake of fact.

## C.   Benefits Obtained by Lamar

As discussed above, Lamar is deemed to have constructive knowledge of the litigation between Bailey and OMG as a result of the lis pendens Bailey recorded in *Bailey I*. Because Lamar is deemed to have notice of that litigation, it cannot claim that its occupancy of the leasehold was the result of a mistake of fact regarding the validity of the sublease between Bailey and OMG. Therefore, we must conclude that the trial court erred in finding otherwise and applying the reasonable rental value measure of damages. Bailey is entitled to recover damages from Lamar for its wrongful occupation of Bailey's leasehold interest measured by the benefits Lamar obtained as a result of that wrongful occupancy. As discussed above, in connection with OMG, the benefits obtained in this case are the profit Lamar made on its sale of advertising space during the period of time it wrongfully occupied Bailey's leasehold. Lamar and Bailey agree that figure is $99,580.64. Therefore, we will amend the judgment accordingly.

We recognize, in reaching this conclusion that the trial court in *Bailey I* contributed to the confusion in this case by refusing to order ejectment because removal of the billboards would constitute waste. OMG argues that the trial court's ruling constitutes a "judicially created tenancy" allowing the billboards to remain on Bailey's leasehold and also allowing OMG to continue to sell advertising space on those billboards. In other words, OMG contends that the trial court's ruling had the effect of creating a permanent trespass, not only allowing the billboard structures to remain but also allowing OMG to continue to sell advertising space on the billboards. There are several flaws in this argument. First, if the trial court in *Bailey I* had intended its ruling to create a permanent trespass of any kind then it should have awarded Bailey damages for the duration of his leasehold interest which does not terminate until 2008. (*Slater v. Shell Oil Co.* (1943) 58 Cal.App.2d 864, 869–870 [137 P.2d 713].) Second, and perhaps most telling, if OMG viewed the *Bailey I* judgment as creating a permanent trespass in its favor, OMG would not have needed to fabricate the sublease between itself and

Bailey. Third, the trial court in this case rejected the permanent trespass assertion, as previously noted, and instead found that the trespass by both OMG and Lamar was a continuing trespass. Fourth, the cases cited by OMG to support its permanent trespass claim involve trespasses committed by things, such as buildings and sewer pipe,[9] not by business operations. Finally, even if OMG believed that the judgment in *Bailey I* created a permanent trespass in its favor, OMG offers no theory under which it could transfer the benefit of that trespass to Lamar.

For each of the reasons noted, the judgment in *Bailey I* cannot be construed as establishing a permanent trespass by OMG. (*Slater v. Shell Oil Co*, *supra*, 58 Cal.App.2d at p. 870.) The only reasonable interpretation of the trial court's denial of ejectment in *Bailey I* is that it is limited to the billboard structures—the billboards could remain on the property, but not OMG.[10] A contrary conclusion would have the effect of permitting OMG to occupy Bailey's leasehold without his permission and for the duration of his tenancy, requiring OMG in turn to pay only the reasonable rental value of the land (the measure of damages the *Bailey I* court incorrectly applied).

In summary we conclude that the trial court incorrectly found that the reasonable rental value of the property was the measure of damages pertinent to Lamar. The trial court instead should have applied the "benefits obtained" measure of damages set out in section 3334, subdivision (b)(1). Under that measure of damages, Bailey is entitled to recover the profit Lamar made by reason of its wrongful occupation of Bailey's leasehold interest. That benefit in this case is the profit Lamar made by selling advertising space on the billboards during the time Lamar wrongfully occupied Bailey's property.

## DISPOSITION

The judgment is modified by amending the damages awarded against Lamar from $86,131, measured by the reasonable rental value of the property,

---

[9] The cases OMG cites to support its permanent trespass argument do not involve trespassing business operations but instead involve trespassing objects—mud in *Spaulding v. Cameron* (1952) 38 Cal.2d 265 [239 P.2d 625], a sewer pipe in *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228 [251 Cal.Rptr. 49], and encroaching buildings in *Kafka v. Bozio* (1923) 191 Cal. 746 [218 P. 753], *Castelletto v. Bendon* (1961) 193 Cal.App.2d 64 [13 Cal.Rptr. 907], and *Rankin v. DeBare* (1928) 205 Cal. 639 [271 P. 1050].

[10] Presumably Bailey would be required to compensate OMG for the structures if OMG were to make such a demand.

to $99,580.64, the net revenue or profit generated by reason of Lamar's wrongful occupation of Bailey's leasehold.

As modified, the judgment is affirmed. Each party to bear their own costs on appeal.

Gaut, J., and Miller, J., concurred.