Filed 5/9/16  Thee Aguila, Inc. v. ERDM, Inc. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THEE AGUILA, INC., | B257987 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. BC482246) |
| v. | |
| ERDM, INC. et al., | |
| Cross-defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Affirmed in part; reversed in part.

Law Offices of Guinevere M. Malley and Guinevere M. Malley for Cross-complainant and Appellant.

Century Law Group and Karen A. Larson for Cross-defendants and Respondents.

## I. INTRODUCTION

This is an appeal from an order granting a Code of Civil Procedure section 425.16[1] special motion to strike a single cause of action in a cross-complaint. At issue is the third cause of action in the cross-complaint for slander of title. Cross-complainant, Thee Aguila, Incorporated, appeals from an order granting in part the special motion to strike. Although not a party to this appeal, also named as a cross-complainant is Henry Aguila.

Four of the cross-defendants, Edgar Fragoso, Santiago Acuna, Eva Meneses, and ERDM, Inc., sued cross-complainant and Mr. Aguila. In the second amended complaint, filed by the Law Offices of David J. Wilzig, Mr. Fragoso, Mr. Acuna, Ms. Meneses, and ERDM, Inc. alleged a contract breach claim. The contract breach claim arose from obligations purportedly owed by cross-complainant and Mr. Aguila under a lease of a nightclub venue. Several months later, a substitution of attorney was filed on behalf of the aforementioned cross-defendants by their new counsel, Karen Larson of the Century Law Group, LLP. As will be noted, when the cross-complaint was ultimately filed, Ms. Larson and Century Law Group LLP were named as the remaining cross-defendants.

Ms. Larson, on behalf of Century Law Group, LLP, recorded a pending action notice based upon the contract breach claims in the second amended complaint. Cross-complainant and Mr. Aguila then filed a motion to expunge the pending action notice recorded by Ms. Larson on behalf of Mr. Fragoso, Mr. Acuna, Ms. Meneses and ERDM, Incorporated. The trial court ordered the filing of a third amended complaint which contains a more comprehensive contract breach claim premised upon alleged violations of the nightclub venue lease. In total, three expungement motions were filed and denied.

Cross-complainant then filed a cross-complaint which contains a title slander cause of action. The basis of the title slander cause of action was the recordation of the pending action notice by Ms. Larson and her law firm on behalf of the other cross-defendants. In response, all cross-defendants filed a special motion to strike the entirety

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise noted.

of the cross-complaint.  Thereafter, cross-defendants filed a second special motion to strike.  The trial court granted cross-defendants' motions in part, striking the cross-complaint's title slander cause of action filed by cross-complainant and Mr. Aguila.  We reverse the order granting the special motion to strike the title slander claim as to cross-complainant.

## II.  BACKGROUND

### A.  The Original and First and Second Amended Complaints

On April 5, 2012, the complaint was filed.  The complaint was filed on behalf of Mr. Acuna, Ms. Meneses, Mr. Fragoso and ERDM, Inc.  The complaint alleged the following.  ERDM, Inc. is a California corporation.  Cross-complainant is a corporation doing business in Los Angeles County.  Mr. Aguila is a resident of Los Angeles County and is cross-complainant's sole owner and president.

On May 1, 2000, Mr. Acuna and Mr. Fragoso leased real property which consists of a nightclub venue located at 8825 Washington Boulevard in Pico Rivera, California from another owner.  Mr. Acuna and Mr. Fragoso operated the nightclub venue known as El Rodeo.  On May 1, 2006, cross-complainant purchased the nightclub venue and the lease was amended to identify as the tenants, Mr. Acuna, Mr. Fragoso, Ms. Meneses and ERDM, Inc.  The lease was signed by Mr. Aguila on behalf of cross-complainant and Mr. Acuna on behalf of ERDM, Inc.  Problems with criminal and other misconduct arose.  According to the complaint, all of those matters were resolved to the satisfaction of sheriff's officials and the Department of Alcoholic Beverage Control.

Thereafter, cross-complainant filed a nuisance complaint in the trial court.  And, on October 18, 2011, cross-complainant filed an unlawful detainer complaint on the ground that the nightclub venue had become a nuisance.  In addition, cross-complainant sought monetary damages.  In 2011, cross-complainant and Mr. Aguila began representing to others that they were the owners of the nightclub venue.  Based upon

3

these allegations, the initial complaint alleged causes of action for: intentional prospective economic advantage interference; intentional and negligent emotional distress infliction; and unfair competition. Plaintiffs requested as relief: special, general, and punitive damages; costs; a preliminary and permanent injunction; and any further and just relief.

On June 5, 2012, Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. filed their first amended complaint. Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. expanded on their allegations against cross-complainant and Mr. Aguila concerning the advertising to sell or lease the nightclub venue. In March 2012, Mr. Aguila, on his own behalf and that of cross-complainant, sent direct mailers regarding the sale or lease of the nightclub venue. Also in March 2012, they advertised in the Spanish-speaking newspaper La Opinion that the nightclub venue was being sold or leased. Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. alleged seven causes of action: written contract breach; implied covenant of good faith and fair dealing breach; intentional prospective economic advantage interference; intentional and negligent emotional distress infliction; intentional misrepresentation; and unfair competition.

On October 25, 2012, Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. filed their second amended complaint. Plaintiffs further expanded their allegations against defendant regarding the sale or lease advertising. According to the second amended complaint, confusion had arisen as to the nightclub venue's ownership. Because of the misleading advertising, it was difficult to book "top quality entertainment talent" which created more lucrative gate receipts because of confusion concerning the nightclub venue's ownership. According to the second amended complaint, there was a 25 to 30 percent drop in "door business" and a corresponding diminution of food and alcohol sales. Also, certain vendors of the nightclub venue required payment on a cash basis because of concerns about the facility's ownership and long-term viability. This increased the capital costs incurred by Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. Plaintiffs alleged the same seven causes of action as in their first amended complaint.

4

B.  Pending Action Notice, Third Amended Complaint and Expungement Motions

On July 30, 2013, of Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. recorded a pending action notice pursuant to section 405.20 with the Los Angeles County Recorder.  The notice asserted that the second amended complaint affected title to real property.  The pending action notice states in part:  "PLEASE TAKE NOTICE that this action was commenced in the above-named Court on April 05, 2012 by Plaintiffs ERDM, Inc. a California corporation, [Mr. Acuna], [Mr. Fragoso], and [Ms. Menses], ('Plaintiffs'), against Defendants [Mr. Aguila], an individual, [cross-complainant], A California corporation, and DOES 1 through 25, Inclusive, (collectively referred to as 'Defendants') and is now pending, an action in which a real property claim is alleged, such claim, including a first right of refusal in regards to both leases and real estate purchases as set forth in a lease attached as an exhibit to the first amended complaint on file in the Court above.  The most recent complaint, a second amended complaint includes counts for Breach of Written Contract (lease), Breach of Implied Covenant of Good Faith and Fair Dealing, Intentional Interference with Prospective Economic Advantage, Intentional and Negligent Infliction of Emotional Distress, Intentional Misrepresentation and Unfair Competition pursuant to Business and Professions Code §[]17200.  This action affects title to the real property referred to here and affected by this action. . . ."  A legal description of the property was set forth on the pending action notice signed by Ms. Larson on behalf of Century Law Group LLP.  The recorded pending action notice was filed in trial court on August 2, 2013.

On August 26, 2013, Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. moved for leave to file a third amended complaint.  The third amended complaint's purpose was to add additional factual allegations and new causes of action for:  specific performance of the first right of refusal; fraudulent conveyance; declaratory relief; and for lease reformation.  According to the notice of motion, "This Motion is made upon the ground that allowing the filing of a third amended complaint furthers justice because it

5

would permit ERDM[, Inc.] to add those factual allegations and additional claims that have become apparent as necessary since the last pleading, i.e. to permit the Court to enjoin [Mr. Aguila] from continuing those actions that prompted the commencement of this suit that have impaired and continue to impair the substantial property rights that ERDM[, Inc.] has at the subject property, as well as more fully set forth ERDM[, Inc.'s] claims against [Mr. Aguila], thereby allowing resolution of all disputed matters between the parties in this action."

On August 29, 2013, cross-complainant and Mr. Aguila moved to expunge the pending action notice. As can be noted, this was three days after Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. filed their motion for leave to file a third amended complaint. Cross-complainant and Mr. Aguila argued the second amended complaint did not allege any real property claims as required for recordation of a pending action notice. Cross-complainant and Mr. Aguila relied on a declaration from their counsel, Tracy L. Hughes. According to that declaration: after the pending action notice was recorded, Ms. Hughes spoke with Ms. Larson, on August 6, 2013; Ms. Hughes requested that the improper pending action notice be expunged; and on August 23, 2013, Ms. Hughes again requested the pending action notice be expunged.

On September 17, 2013, the trial court denied the first motion to expunge the pending action notice and granted the request to file a third amended complaint. The trial court ruled the third amended complaint contained a real property claim. But, the trial court noted: "Plaintiffs' Opposition essentially admits that the Second Amended Complaint is vulnerable to a motion to expunge lis pendens, but asks the Court to consider its proposed Third Amended Complaint. The Court has done so, and has granted Plaintiffs the relief they request . . . ."

Cross-complainant then filed a second motion to expunge the pending action notice on December 11, 2013. (The initial expungement motion had been filed by both cross-complainant and Mr. Aguila.) The trial court denied cross-complainant's second expungement motion on January 9, 2014. On January 22, 2014, cross-complainant moved to post a bond under section 405.33 in order to expunge the pending action notice.

6

(In the trial court, the parties often referred to this as the third expungement motion.) On March 25, 2014, the trial court denied the third expungement motion.

C. The Allegations in September 17, 2013 Third Amended Complaint

The third amended complaint was deemed filed on September 17, 2013. Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. made the following additional allegations. ERDM, Inc. had a leasehold interest in the Pico Rivera property. The nightclub venue lease contained options affecting future title and possession of the premises. Namely, ERDM, Inc. possessed the right of first refusal for any new offer to lease the nightclub venue.

Other allegations in the third amended complaint are somewhat confusing. On July 21, 2012, Mr. Aguila entered into another purported 50-year "lease" with Robert Hernandez prior to the termination of plaintiffs' lease. The third amended complaint refers to Mr. Hernandez as an "insider." This alleged agreement was entered into three years prior to the termination of the lease with ERDM, Inc. Mr. Aguila contended the agreement with Mr. Hernandez triggered the options held by ERDM, Inc. under paragraph 35 of the lease with cross-complainant.

Paragraph 35 of the lease states: "OPTIONS AND RIGHT OF FIRST REFUSAL. [¶] (a) Proposals From Third Parties Regarding Lease of Premises. [¶] Landlord and Tenant agree that this Lease is for the term specified in Article 3 supra, and that there is no option to renew. Notwithstanding the foregoing, at the expiration of the term of this Lease, Tenant shall have the right of first refusal to any new offer to lease the Premises of the building of which the Premises are a party of including additions and improvements. [¶] (b) Proposals From Third Parties Regarding Sale of Premises. [¶] In the event that during the term of this Lease the Landlord secures a buyer for the Premises or the building of which Premises are a part of, Landlord shall provide in writing to Tenant any offer from third parties to buy the Premises or the building the Premises are a part of. Tenant shall have the right to inspect the offer to buy the Premises or the building the

7

Premises are a part of and shall have the right of first refusal.  Furthermore, in the event that Landlord agrees to sell Premises or the building of which the Premises are a part of and Tenant either cannot or does not exercise his option of First Refusal, Landlord promises that if sale of Premises or the building of which the Premises are a part of occurs during the term of this Lease, Tenant's lease and its terms shall be incorporated into the contract for sale of the Premises or building of which the Premises are a part of."

The third amended complaint alleges:  the lease with Mr. Hernandez was not a bona fide offer; Mr. Aguila's actions impaired the right of first refusal held by ERDM, Inc.; Mr. Aguila is acting as if ERDM, Inc.'s option rights had lapsed or been waived; Mr. Aguila has taken steps to create the false impression that ERDM, Inc. has no intention of exercising its options or has waived its rights; and Mr. Aguila has created the false impression that ERDM, Inc. will not be operating the nightclub venue once the lease terminates on April 30, 2015.  By contrast, Mr. Aguila contends he has no further obligations concerning the options possessed by ERDM, Inc.  Among other things, the third amended complaint seeks specific performance of ERDM, Inc.'s rights under paragraph 35 of the lease.  The third amended contains eight causes of action:  specific performance of the lease; to vacate a fraudulent transfer to Mr. Hernandez; written contract breach; declaratory relief; implied covenant breach; intentional and negligent interference with economic advantage; and unfair competition.  The third amended complaint's prayer for relief seeks:  specific performance of paragraph 35 of the nightclub venue lease so as to "effectuate" the options of ERDM, Inc.; issuance of orders requiring Mr. Aguila to make a "bona fide offer to lease/sell" and setting aside the "Hernandez Lease"; a declaration of the parties' respective rights and interests; reformation of unspecified lease provisions; damages; costs of suit; attorney fees; and other appropriate relief.

## D. The January 30, 2014 Cross-Complaint

On January 30, 2014, cross-complainant and Mr. Aguila filed a cross-complaint against: Mr. Acuna, Mr. Fragoso, Ms. Menses and EDRM, Inc.; Ms. Larson, plaintiffs' trial and appellate counsel; and Century Law Group, LLP, Ms. Larson's law firm representing plaintiffs. Cross-complainants allege causes of action for contract breach, contractual indemnity and title slander. On appeal, the sole issue relates to the third cause of action for title slander. Regarding title slander, cross-complainant and Mr. Aguila allege the following. The July 30, 2013 pending action notice represented to third parties that it was based on a complaint containing a claim affecting title or possession of real property. This representation was false because the second amended complaint, the operative pleading at the time the pending action notice was recorded, did not contain "any claim" affecting title or possession. Also, the pending action notice was not privileged under Civil Code section 47, subdivision (b)(4). The cross-complaint alleges: cross-defendants knew this representation on July 30, 2013 was false because they subsequently sought leave to file a third amended complaint; cross-defendants admitted the second amended complaint did not contain any claims affecting title or possession; the "filing" of the pending action notice was malicious because it was done with the intent to prevent cross-complainant from refinancing the nightclub venue; and this would injure cross-complainant financially. Cross-complainant requested as relief: general, special, and punitive damages; interest; attorney's fees and costs; and other appropriate further relief.

## E. Cross-defendants' Special Motions to Strike

### 1. Cross-defendants' moving papers

On April 1, 2014, cross-defendants filed a special motion to strike the all three causes of action in the cross-complaint. Cross-defendants asserted: the pending action

9

notice was recorded in connection with their lawsuit against cross-complainant and Mr. Aguila and was protected activity; cross-complainant and Mr. Aguila could not demonstrate a probability of success on the merits as to the title slander cause of action; and the trial court had already found the third amended complaint supported the filing of a pending action notice. Cross-defendants filed no declarations in support of their special motion to strike but did file a judicial notice request. The judicial notice request attached one reporter's transcript and one tentative ruling which later was a final determination by the trial court. The reporter's transcript was of the January 9, 2014 hearing. At the conclusion of the January 9, 2014 hearing, the trial court denied the second motion to expunge the pending action notice. In addition, cross-defendants sought judicial notice of the trial court's March 25, 2014 ruling in connection with the third motion to expunge the pending action notice. As noted, this third motion in connection with the efforts to expunge the pending action notice sought permission to post a bond pursuant to section 405.33.

On April 29, 2014, cross-defendants filed a second special motion to strike. The second motion to strike argues: the filing of the lawsuit and pending action notice arose from the exercise of cross-defendants' petitioning rights; the trial court had previously repeatedly upheld the recordation of the pending action notice; by the time the cross-complaint had been filed, the trial court had twice rejected motions to expunge the pending action notice; and the filing of a pending action notice is absolutely privileged. In addition, on April 29, 2014, cross-defendants filed a judicial notice request. The April 29, 2014 judicial notice request attaches: the September 17, 2013 tentative ruling denying the first expungement motion and granting an amendment motion; the reporter's transcript of the September 17, 2013 proceedings; the January 9, 2014 tentative ruling prepared in response to the second expungement motion; the reporter's transcript of the January 9, 2014 hearing held on the third expungement motion; the March 25, 2014 tentative ruling later adopted by the trial court; the summons issued in an unlawful detainer case filed by cross-complainant; and the final statement of decision filed September 24, 2012, in an unlawful detainer action commenced on October 18, 2011.

10

## 2. Cross-complainant's and Mr. Aguila's opposition papers

Cross-complainant and Mr. Aguila argued the pending action notice was not privileged under Civil Code section 47, subdivision (b)(4). Cross-complainant and Mr. Aguila contended that: the second amended complaint contained no real property claims; the pending action notice was not subject to section 425.16, subdivision (e) when it was recorded; and thus the burden never shifted to them to make a minimal merit showing. In addition, cross-complainant and Mr. Aguila contended: they were likely to succeed on their title slander cause of action because the second amended complaint contained no real property claims; the pending action notice was unsupported at the time of recording; and they sustained monetary damage.

Mr. Aguila's declaration was filed as part of the opposition papers. He was the cross-complainant's president. Mr. Aguila detailed the law enforcement-related problems with the nightclub venue in 2011 which ultimately involved the sheriff's department and the City of Pico Rivera. Mr. Aguila attached a copy of a letter from Captain James Thorton Jr., the Pico Rivera Sheriff's Station's commander, to his declaration. Captain Thornton's letter detailed law enforcement-related problems at the nightclub venue.

Mr. Aguila notified Mr. Fragoso, Mr. Acuna and Ms. Meneses that cross-complainant was attempting to secure refinancing of the nightclub venue. Mr. Aguila requested access to the nightclub venue so that the potential lender could take photographs for purposes of assisting in the refinancing. According to Mr. Aguila, Mr. Fragoso, Mr. Acuna and Ms. Meneses denied Mr. Aguila or the "lender" access to the nightclub venue. And in Mr. Aguila's opinion, the nightclub venue was worth around $8 million. The first trust deed on the premises was in the sum of approximately $1.8 million. But there was also a second trust deed on the premises of approximately $590,000. A balloon payment on the trust deed in the sum of $583,738.52 was payable on April 1, 2014.

11

Mr. Aguila described the problems securing refinancing: "[Cross-complainant] cannot refinance the Property as no title insurance company will insure any loan as long as the [pending action notice] is in place. [Cross-complainant] had been working with Capital Funding Group to refinance the Property to meet the balloon payment. Capital Funding Group has denied the loan, as long as the [pending action notice] is in place, because they cannot secure title insurance. Five separate title insurance companies have refused to issue title insurance for the Property as long as the [pending action notice] is in place." In Mr. Aguila's opinion, the nightclub venue is unmarketable: "The [pending action notice] placed on the Property by the Plaintiffs and their attorney has made the Property unmarketable and unsuitable as security for a loan. Due to the [pending action notice, cross-complainant] was unable to close the loan it had secured prior to the [pending action notice] being filed. [Cross-complainant] was unable to refinance the Property at the following very favorable rates of 5.5[ percent] on a loan commitment of $3,500,000.00."

Mr. Aguila continued: "[Cross-complainant] was damaged by the recording of the [pending action notice] because as discussed it was in the process of refinancing the Property when the [pending action notice] was recorded in July 2013. The lender refused to close the refinance when it learned of the [pending action notice]. [Cross-complainant] has suffered damages in the form of higher interest payments and now having to pay hard money lender fees to pay off the balloon payment of the second [trust deed]." According to Mr. Aguila, cross-complainant had performed all its duties and obligations under the lease agreement or the responsibility to do so had been excused.

Also, cross-complainants relied on portions of the September 17, 2013 reporter's transcript. At the September 17, 2013 hearing, the trial court denied the motion to expunge the pending action notice and granted the request to file the third amended complaint. At the conclusion of the hearing though, according to the trial court, the third amended complaint had not yet been filed.

12

### 3. Cross-defendants' reply

The reply, which includes a declaration by Ms. Larson, explains: at the time of the hearing on the special motion to strike, there were eight pending cases between the parties, six of which were active; all of the cases arose from the lease of the nightclub venue; and cross-complainants filed five lawsuits concurrent with or after the filing of the third amended complaint on September 17, 2013. Ms. Larson explained the importance of various issues in the case and the delays which have resulted because of the intensity of the litigation. Additionally, a declaration by Robert Wright was filed which discussed issues concerning insurance for the nightclub venue. Mr. Fragoso filed a declaration which explained that: ERDM, Inc. was in full compliance with all of its lease obligations; no insurance is available that would cover the type of damages cross-complainant and Mr. Aguila seek; cross-complainant and Mr. Aguila tried to sell "our business" and told people that the nightclub venue as operated by ERDM, Inc., Mr. Acuna, Mr. Fragoso and Ms. Menses was going out of business; the partners operating the nightclub venue and their employees were concerned about Mr. Aguila's anger; Mr. Aguila had made threats; several letters should be filed under seal because they contain false statements; he understood the property had been sold; and cross-complainants were violating the first refusal rights of ERDM, Inc., Mr. Acuna and Ms. Menses. In addition, Mr. Fragoso's declaration states, "I have confirmed that there is no cross liability insurance available that would cover the type of damages for which [Mr. Aguila] seeks indemnification including the fees he owes us for losing his prior unlawful detainers."

In addition, as to the title slander cause of action, cross-defendants argued: the trial court had upheld the propriety of the pending action notice on three occasions; the filing of a pending action notice is absolutely privileged; cross-complainants were bound by the prior rulings; this is a textbook case of a lawsuit filed to chill protected activity; and Ms. Larson may be compelled to seek ex parte relief to file additional evidence under seal.

13

### 4. The trial court's ruling

On June 6, 2014, the hearing was held on the special motion to strike. The trial court issued a tentative decision which ultimately became its final ruling. The trial court noted the parties did not address the issue of the timeliness of the special motion to strike. The trial court nonetheless considered the merits of the special motion to strike. The trial court ruled cross-defendants had met their burden of demonstrating the recording of the pending action notice arose from "protected activity" as to the title slander cause of action.

The trial court also ruled cross-complainant did not demonstrate a probability of success on the merits of its title slander cause of action. The trial court had previously ruled the third amended complaint, the operative pleading, contained a real property claim. Further, the trial court found defendant had failed to demonstrate malice or that the pending action notice was false. The trial court granted the special motion to strike as to defendant's title slander cause of action. The trial court denied the special motion to strike as to the cross-complaint's contract breach and indemnity causes of action.

## III. DISCUSSION

### A. Timeliness of the Filing of the Special Motion to Strike

Cross-complainant argues cross-defendants' special motion to strike was not timely filed. The cross-complaint was filed on January 30, 2014. Cross-defendants' special motion to strike was not filed on April 1, 2014, 61 days later. Section 425.16, subdivision (f) states in pertinent part, "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348-1350; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 351.) However, as noted, cross-

14

complainant failed to raise this argument before the trial court. Thus, the timeliness issue has been forfeited. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 436; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564; see *Doers v. Golden Gate Bridge, etc.* (1979) 23 Cal.3d 180, 184, fn. 1.)

## B. Special Motion to Strike Legal Standards

Section 425.16, subdivision (b)(1) provides for the dismissal of a lawsuit under these circumstances: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16, subdivision (e) provides in part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . ." In order to protect the constitutional rights of petition and free speech, the special motion to strike statute is to be construed broadly. (§ 425.16, subd. (a); *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119-1121.)

When a special motion to strike is filed, the trial court must consider two components. We will describe these components in the context of a cross-defendant's special motion to strike a cross-complainant's cause of action in a dispute over

15

petitioning rights. First, the cross-defendant has the initial burden of establishing a prima facie case that the cause of action arose out of its actions in the furtherance of petitioning rights. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) Second, once it is established the cause of action at issue arises out of the exercise of petitioning rights, the burden shifts to the cross-complainant. The cross-complainant must then establish its claim has minimal merit. (§ 425.16, subd. (b)(1); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278-279; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94; *Flatley, supra,* 39 Cal.4th at p. 314.) Appellate courts exercise their independent judgment to determine whether the cross-defendant was engaged in the enumerated activity in section 425.16, subdivision (e). (*Flatley, supra,* 39 Cal.4th at pp. 325–326; *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1055.)

Our Supreme Court has described the minimal merit burden thusly in the context of a plaintiff's claims: "To satisfy the second prong, 'a plaintiff responding to an anti-[strategic lawsuit against public participation] motion must "'state[] and substantiate[] a legally sufficient claim.'" [Citation.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citation.] 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility, [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."' [Citation.] If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' [Citation.]"

16

(*Oasis West Realty, LLC, supra,* 51 Cal.4th at p. 820; accord *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 197-198.)


## C. Cross-defendants Sustained Their Initial Burden


Cross-defendants recorded their pending action notice and filed it in the trial court. Cross-complainant's title slander claim is based on the recordation of the pending action notice. Cross-defendants have met their initial burden of showing that the title slander claim arises from the petition-related conduct. The recordation of the pending action notice falls within the enumerated petitioning related activities specified in section 425.16, subdivision (e)(1) and (2). (*Alpha and Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 660, fn. 4; *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 806; *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1050 (*Manhattan Loft*); *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285.)

Cross-complainant argues the recordation of the pending action notice was not an act in furtherance of cross-defendants' petitioning rights. Cross-complainant reasons the pending action notice was based on the second amended complaint that did not contain a claim affecting title or possession of property. Thus, cross-complainant argues cross-defendants' pending action notice did not arise from the true exercise of petitioning rights. We disagree. Cross-complainant's contention conflates cross-defendants' initial burden and the merits prong of the special motion to strike process. Our Supreme Court has held, "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, *supra*, 39 Cal.4th at p. 316; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 965; see *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 ["[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-[strategic lawsuit against public participation] analysis, and then permit the parties to

17

address the issue in the second step of the analysis, if necessary."].) Thus, cross-complainant's contention that the filing of the pending action notice did not arise from the exercise of petitioning related rights has no merit.

D. Cross-Complainant Has Met Its Burden of Showing Its Title Slander Claim Has Minimal Merit

We now decide whether cross-complainant met its burden to show that its title slander claim has minimal merit. Cross-complainant argues there is a triable controversy as to whether unprivileged title slander occurred to the nightclub venue between July 30 and September 17, 2013. The pending action notice was recorded on July 30, 2013. At that time, the operative pleading was the second amended complaint. It was not until September 17, 2013, when the third amended complaint was filed, that a pleading was on file which affected title to real property. To establish a title slander cause of action, a party must show: a publication which is without privilege or justification; the publication is false; and the publication caused direct and immediate pecuniary loss. (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 472; *Manhattan Loft*, *supra*, 173 Cal.App.4th at p. 1051.) Actual malice is not an element of a title slander claim. (*M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 199; *Spencer v. Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614, 622-623.)

It is undisputed that recordation and filing of the pending action notice constitutes publication for purposes of a title slander cause of action. Cross-complainant does not contend the trial court erred by finding the third amended complaint contains a real property claim. Instead, cross-complainant argues the pending action notice was improperly recorded because the operative pleading at the time, the second amended complaint, did not contain a real property claim. Cross-complainant argues that for the period between July 30 and September 17, 2013: if the second amended complaint did not state a real property claim, the pending action notice was recorded without justification; the litigation privilege does not apply to the recordation of the pending

18

action notice when the second amended complaint contained no real property claim; plaintiffs knew the second amended complaint did not support the recordation of the pending action notice but nonetheless recorded it; and it was damaged by the improperly recorded pending action notice.

We now turn to the issues of justification and privilege. Section 405.20 describes who can record a pending action notice: "A party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged." Section 405.4 defines "Real property claim" in pertinent part as follows: "'Real property claim' means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property. . . ." As noted, the second amended complaint made allegations regarding cross-complainant's actions in advertising the sale or lease of the nightclub venue. According to the second amended complaint, these actions created difficulties in booking entertainment to perform at nightclub venue, issues with vendors, increased capital costs and decreased revenue. Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. alleged a contract breach cause of action for violation of the lease. However, Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. requested as relief money damages only. Money damages are insufficient to permit the filing of a pending action notice. (See *Ziello v. Superior Court* (1995) 36 Cal.App.4th 321, 322-323 [borrower's suit for declaratory relief as to earthquake insurance proceeds did not involve real property but was a matter of contract only]; *North Coast Business Park v. Superior Court* (1984) 158 Cal.App.3d 858, 860 [fiduciary duty breach cause of action in transferring partnership real property concerned personal property interest in the partnership, not the real property].)

The second amended complaint contains an injunctive request in relation to cross-complainant's alleged acts of unfair competition in violation of Business and Professions Code section 17200. However, a reasonable argument can be made Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. requested injunctive relief only in an effort to prevent further monetary injury. Mr. Acuna, Mr. Fragoso, Ms. Menses and ERDM, Inc. alleged in their unfair competition cause of action: "Plaintiffs have no adequate remedy

19

at law in that the misrepresentations and false advertising by Defendants as to the ownership and management of El Rodeo have, and will in the future, divert patrons from El Rodeo in an unfair manner, resulting in a loss of Plaintiffs' business, income, customers and goodwill, all of which have the potential of driving Plaintiffs out of business if the acts of Defendants are not enjoined." These allegations do not allege an interest in the nightclub venue. These allegations do not implicate their right to possession of specific real property. No allegations appear in the second amended complaint which would qualify as a real property claim under section 405.4. (Cf. *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648-649 [pending action notice properly recorded for suit to set aside fraudulent conveyance of real property]; *Bailey v. Outdoor Media Group* (2007) 155 Cal.App.4th 778, 781 [enforcement of leasehold interest in real property]; *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 967 [specific performance of real property purchase and sale agreement]; *Wilkins v. Oken* (1958) 157 Cal.App.2d 603, 606 [rescission of real property sale contract].)

Cross-complainant also asserts the Civil Code section 47, subdivision (b) litigation privilege under is inapplicable to the pending action notice which was recorded prior to the third amended complaint's filing. Our Supreme Court has held: "[T]he [litigation] privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.]" (*Fatley*, *supra*, 39 Cal.4th at p. 322; accord, *Alpha and Omega Development, LP v. Whillock Contracting, Inc.*, *supra*, 200 Cal.App.4th at pp. 666-667 [where litigation privilege applies, plaintiffs recording lis pendens cannot be sued for title slander cause of action].) But Civil Code section 47, subdivision (b)(4) provides an exception to the litigation privilege in the case of the recordation of a pending action notice. Civil Code section 47, subdivision (b)(4) states, "A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." As noted, when the pending action notice was recorded, there is evidence no lawsuit which affected a right of possession of real property was on file. Thus, there is evidence the pending action notice was not a

20

privileged publication at the time it was recorded. (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1380 ["[I]f the pleading filed by the claimant in the underlying action does not allege a real property claim . . . the lis pendens . . . is not privileged."]; see *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 475 [same].) Cross-complainant has shown its contention that the pending action notice was not privileged or justified at the time of recording and has minimal merit.

Further, cross-complainant has demonstrated that its argument in the pending action notice was false has minimal merit. To satisfy the third element of a title slander cause of action, the publication must be false, either knowingly so or made without regard to its truthfulness. (*Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 264; accord, *Appel v. Burman* (1984) 159 Cal.App.3d 1209, 1214.) Cross-complainant argues cross-defendants knew the second amended complaint did not state a real property claim. Cross-complainant relies on plaintiffs' opposition to the first motion to expunge the pending action notice and several declarations. The opposition to the first expungement motion stated: "Although it is arguable whether the present pleadings [in the second amended complaint] sufficiently permit the remedies required to enforce the [lease] Options, and enjoin [Mr. Aguila's] interferences, it is clear that the intent of the prior pleadings was to protect ERDM's leasehold. Where there may be doubt as to whether the [second amended complaint] would accomplish this, the [third amended complaint] is clear: through the proposed causes of action for specific performance, declaratory relief, and fraudulent conveyance, ERDM seeks a judicial determination of its leasehold interests. . . ." As noted, the trial court, in ruling on the first motion to expunge, stated, "Plaintiffs' Opposition essentially admits that the Second Amended Complaint is vulnerable to a motion to expunge lis pendens . . . ."

In addition, Ms. Larson's September 6, 2013 declaration states: "In my opinion the [second amended complaint] did not clearly set forth that ERDM's intended action is not just to be made whole for damages resulting from [Mr. Aguila's] past bad acts but to preserve its present and future leasehold from further bad acts . . . ." Also, Mr. Fragoso's March 10, 2014 declaration in support of the motion for leave to file the third amended

21

complaint admits: "Upon hiring Ms. Larson we decided we needed to amend the complaint to update the events in the pleadings and to be sure that the Court understood that this suit is about preserving our nightclub at the Pico Rivera site. That the suit is not just about us getting monetary damages." Of further consequence is the motion for leave to file the third amended complaint. As noted, the motion admitted the purpose of the third amended complaint was to: add new allegations "that have become apparent as necessary" since the filing of the second amended complaint; to permit the trial court to enjoin violations of the "substantial property rights" of ERDM, Inc.; and to allow "resolution of all disputed matters" between the parties. Based on the evidence presented, cross-complainant's argument that the pending action notice was falsely recorded has minimal merit. And the fact that the trial court had previously ruled in denying the expungement motions that the second amended complaint supported a pending action notice is not controlling. In the absence of a final judgment on the merits, res judicata principles are inapplicable. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; *Teitelbaum Furs, Inc. v. Dominion* (1962) 58 Cal.2d 601, 604.)

Cross-defendants argue the pending action notice was true because of the subsequently filed third amended complaint. The falsity element is evaluated at the time of publication. (See *Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 84 ["Disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."]; *Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925, 929 ["Slander of title occurs when there is an unprivileged publication of a false statement which disparages title to property and causes pecuniary loss."].) Cross-complainant's contentions concerning the falsity element have minimal merit.

Finally, we address the issue of whether there is minimal merit to cross-complainant's damage claims. Pecuniary loss is a necessary element of a title slander claim. (*Manhattan Loft, supra*, 173 Cal.App.4th at p. 1057; *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 864.) The Court of Appeal has held, "In an action for wrongful disparagement of title, a plaintiff may recover (1) the expense of legal proceedings

22

necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendability of the property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his property." (*Seeley v. Seymour, supra,* 190 Cal.App.3d at p. 865, fn. omitted; accord, *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.)

In order to demonstrate pecuniary loss, cross-complainant relied upon Mr. Aguila's previously described declaration which we repeat here: "On or about July 22, 2013 Thee Aguila notified Cross-Defendants . . . that it was attempting to refinance the Property and requested access to the Property so the lender could take photos for the loan. . . . . [¶] . . . [¶] Thee Aguila Inc. cannot refinance the Property as no title insurance company will insure any loan as long as the lis pendens is in place. . . . [¶] . . . [¶] Thee Aguila was damaged by the recording of the lis pendens because as discussed it was in the process of refinancing the Property when the lis pendens was recorded in July 2013. The lender refused to close the refinance when it learned of the lis pendens. Thee Aguila has suffered damages in the form of higher interest payments and now having to pay hard money lender fees to pay off the balloon payment of the second [deed of trust]." Mr. Aguila's declaration is sufficient to demonstrate cross-complainant's damage claims have minimal merit. Thus, the special motion to strike should have been denied because cross-complainant has demonstrated its third cause of action has minimal merit.


E.  The Issue of the Liability of Ms. Larson and Her Law Firm


At oral argument, Ms. Larson argued that she and her law firm, who were responsible for filing the pending action notice, could not be individually liable for title slander. If Ms. Larson's argument is that she and her firm may not be liable because they acted in the capacity of counsel, this issue has been forfeited. This discrete issue was not raised in the respondents' brief under a separate heading and may not be presented for the first time at oral argument. (*Japan Line, Ltd. v. County of Los Angeles* (1977) 20 Cal.3d

23

180, 184, revd. on other grounds (1979) 441 U.S. 434; *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977.)

## IV.  DISPOSITION

The June 6, 2014 order granting special motion to strike the cross-complaint's title slander cause of action is reversed.  That portion of the June 6, 2014 order denying the special motion to strike is affirmed.  Upon remittitur issuance, a new order is to be entered denying in its entirety the special motion to strike the cross-complaint.  Cross-complainant, Thee Aguila, Incorporated, shall recover its appeal costs from cross-defendants, Edgar Fragoso, Santiago Acuna, Eva Meneses, ERDM, Incorporated, Karen Larson and Century Law Group LLP.  Nothing in this opinion affects the order granting the special motion to strike as to cross-complainant, Henry Aguila.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

BAKER, J.

KUMAR, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24