Filed 4/17/26  Soulliere v. Suzuki Motor Corp. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THOMAS JOSEPH SOULLIERE, | G063118 |
| Plaintiff and Appellant, | (Super. Ct. No. 30-2015-00790644) |
| v. | |
| SUZUKI MOTOR CORPORATION, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed March 18, 2026, be modified as follows. On page 21, the second sentence, beginning with "The matter is remanded," is substituted with the following: "The matter is remanded with instructions to set the matter for a new trial on liability (including causation) and damages but excluding punitive damages."

The petition for rehearing is DENIED.


                                        SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS JOSEPH SOULLIERE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SUZUKI MOTOR CORPORATION,<br><br>    Defendant and Appellant. | G063118<br><br>(Super. Ct. No. 30-2015-00790644)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge. Reversed and remanded with instructions. Motion to augment, request for judicial notice, and motion to strike denied.

Singleton Schreiber, Benjamin I. Siminou; The Simon Law Group, Robert T. Simon and Travis Davis for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr., Curt Cutting; Bowman and Brooke, Jordan S. Tabak; Frost Brown Todd, Randall R. Riggs, Jeffrey J. Mortier; Butler Snow and Kathleen Ingram Carrington for Defendant and Appellant.

Defendant Suzuki Motor Corporation appeals from a $41 million judgment entered after a jury found a front brake master cylinder defect caused plaintiff Thomas Joseph Soulliere's motorcycle accident.

Suzuki raises four basic claims. First, it contends there was insufficient evidence of causation, most notably because Soulliere's expert testimony was inadmissible. Second, it contends the trial court wrongly excluded a police officer's testimony, based on his accident report, about his conversation with Soulliere. Third, Suzuki maintains that the court wrongly instructed the jury on causation. Finally, it asserts there was insufficient evidence of its financial condition to support a punitive damages award.

We disagree on the causation issue, finding the expert testimony was admissible and the evidence sufficiently showed causation. We also find no error in the consumer expectations instruction.

But we agree the officer's testimony was admissible as a past recollection recorded and Suzuki's income insufficiently showed its financial condition. We reverse and remand for a new trial on liability and compensatory damages.[1]

FACTS

I.

SOULLIERE'S ACCIDENT

Soulliere bought a used 2009 Suzuki GSX-R600 motorcycle from a dealership in May 2013. He rode it almost daily for several days without experiencing brake problems.

---

[1] We need not address Suzuki's claims regarding the other driver's contribution or the reduction of the punitive damages. We deny as moot Suzuki's motion to strike Soulliere's cross-appellant's reply brief.

Ten days after the purchase, Soulliere rode the motorcycle to work. He applied the brakes several times and they worked properly. At some point, an SUV pulled in front of him and abruptly stopped. Soulliere, driving at a safe speed, tried to brake but the motorcycle capsized and slid into the SUV. He suffered serious injuries to his legs and underwent several surgeries.

Shortly after the accident, a police officer went to the hospital to speak with Soulliere. A doctor told him that Soulliere would be "'heavily sedated'" for several hours. The officer left his card. About 48 hours after the accident, Soulliere called the officer from the hospital and provided a statement. Soulliere gave a detailed account, including his speed and lane position, the SUV's movement from a parking lot into his path, and the traffic conditions that caused the SUV to stop in front of him. According to the report, Soulliere stated "he was unable to maneuver his motorcycle out of the way and was forced to apply his brakes locking up his wheels."

A few weeks later, a repair shop found only cosmetic damage and no brake issues. A friend's father rode the motorcycle 60 to 70 miles without brake problems.

A few months after the accident, Suzuki notified the National Highway Traffic Safety Administration of a defect in the front brake master cylinder of models including the 2009 GSX-R600. Suzuki reported that after a long time without changing, the brake fluid could deteriorate and absorb moisture. If the piston inside the front brake master cylinder had insufficient anti-corrosion coating, corrosion could generate gas. Because the master cylinder's reservoir port was located on the side, the gas could accumulate and affect braking power by reducing proper fluid pressure transmission to

3

the front brake. Over time, the front brake lever may develop a "spongy" feel and stopping distances may be extended.[2]

About a year after the accident, Soulliere allowed a friend to ride the motorcycle, who immediately noticed a "'spongy'" front brake. Soulliere brought the motorcycle to the shop, reporting brake problems. A technician determined that the motorcycle's front brake master cylinder was subject to the recall, and the shop performed the recall repair, discarding the original part.

## II.

### THE FIRST TRIAL AND REVERSAL ON APPEAL

At a 2018 trial, Soulliere testified that his front brake did not respond and applying the rear brake locked the rear wheel. Soulliere introduced extensive evidence about Suzuki's recall.

The trial court barred Suzuki from calling the officer to read Soulliere's statements from his accident report, rejecting Suzuki's reliance on the past recollection recorded hearsay exception as untimely.

The jury found for Soulliere on his strict product liability claims, awarding over $1.4 million in compensatory damages and over $6 million in punitive damages. The court denied Suzuki's motion for judgment notwithstanding the verdict.

This court reversed on appeal. (*Soulliere v. Suzuki Motor Corporation* (Dec. 8, 2020, No. G057266) [nonpub. opn.].) It concluded that, on the record before it, Soulliere had failed to show that any design or manufacturing defect caused his injuries. He had presented "no evidence

_____

[2] For convenience, we use "recall defect" to refer to the nonuniform anti-corrosive coating of the front brake master cylinder's zinc piston. This definition does not bind the trial court and the parties on retrial.

4

explaining why the brakes were working before and after the accident, but not immediately before the accident." The recall evidence was insufficient: "Soulliere never argued his motorcycle had the recall condition" and he described "a sudden and complete failure of braking power," not "weak braking power." This court also held that the trial court erred in finding Suzuki was late in raising the past recollection recorded hearsay exception for the accident report.[3]

This court remanded to allow Soulliere to make an offer of proof through his hydraulic-brake-systems expert, Jeffrey Hyatt, whether "the recall condition can lead to complete brake failure."

III.

OFFER OF PROOF—THE SEAL-DISRUPTION THEORY

On remand, Soulliere submitted a declaration from Hyatt, advancing what the parties call a seal-disruption theory, linking the recall condition to a complete brake failure. Hyatt explained that corrosion in the front brake master cylinder can generate solid corrosion particles in addition to gas. Under his theory, those particles can "adhere[] to or interfere[] with the piston's seal surface and later dislodge[]." If a particle were big enough, it might disrupt the seal enough to create a brake fluid "leak path" bypassing the seal, leading to brake failure.

---

[3] Suzuki has incorporated by reference the record in the prior appeal, including the officer's testimony at the relevant hearing. (Cal. Rules of Court, rule 8.124(b)(2).) We therefore deny Suzuki's motion to augment as unnecessary.



*Soulliere's illustration of Hyatt's seal-disruption theory*

Hyatt used a plastic particle similar in size to corrosion particles found in other front brake master cylinders to disrupt the seal. He measured the dimensions of the leak path that could be created if a particle became trapped by the seal. He then created a channel of the same size in the seal of a functioning master cylinder. The altered seal produced complete brake failure.

Hyatt concluded that "if a leak path were created by a solid material within the [master cylinder] this leak could create a loss of brake pressure." He identified no documented real-world occurrence of this phenomenon. Over Suzuki's opposition, the trial court accepted this offer of proof and set the matter for trial.

## IV.

### RETRIAL

At the 2023 retrial, Soulliere testified his front brake did not respond just before the crash. He said he pumped the lever a few times without effect; the rear brake then locked the rear wheel. His friend testified about the front brake's sponginess one year after the accident.

6

Soulliere called an accident reconstructionist to explain two skid marks at the scene, one darker and longer than the other. The expert opined the darker mark came from Soulliere's locked rear tire and was inconsistent with the front tire having locked. He saw no evidence that the front brake had been applied, believing the lighter mark was unrelated to the accident.

Soulliere presented evidence of Suzuki's recall and called two experts—Hyatt and metallurgical engineer Ramesh Kar—to connect corrosion and front brake failure. Kar described the corrosion process in zinc pistons used in GSX-R master cylinders and testified it could produce "hardened" solids containing zinc and iron. He examined exemplar master cylinders and found both corrosion debris and "micro-tearing" on the side of the piston seal, which he attributed to large debris.

Hyatt similarly testified he examined a master cylinder containing large particles and found a scar mark on the seal, which he concluded was caused by a trapped particle. Over Suzuki's objection, Hyatt expanded on his seal-disruption theory and test. He analogized the mechanism to a pine needle lodged under a windshield wiper: if the needle "lifts the rubber off the surface and creates a leak, then you get a streak"; the obstruction may move with the wiper and may eventually be ejected, after which the wiper—or the seal—functioned normally.

Hyatt explained that in his testing, he glued the plastic particle to the seal to ensure it remained in place so he could measure the resulting gap. He testified he could not replicate a spontaneous seal disruption because it would be "a very irregular event"—if he put corrosion particles in a functional front brake master cylinder, he could have "thousands and thousands of [brake] applications and never get the conditions just right."

Hyatt acknowledged that a trapped particle would need to move with the seal throughout the piston stroke to cause brake failure. He also confirmed he had not tested the hardness of either the corrosion particles or the plastic exemplar he used. He said the plastic was "fairly loose and compressible," while the seal was made of "very pliable and very soft" rubber. ·

When asked about gas accumulation resulting from the corrosion process, Hyatt explained it was a "slow onset process" and a rider may not notice if there was moderate accumulation. Ultimately, Hyatt opined that "if Mr. Soulliere had a brake failure, then it had to be by the seal being disrupted or by an accumulation of gas." He agreed that a brake that is capable of locking the front wheel is performing at 100 percent.

In defense, Suzuki contended the front brake did not fail and Soulliere instead overbraked, locking both wheels. Suzuki's accident reconstructionist testified that the lighter skid mark came from the front tire, which was older and thinner. He opined the motorcycle's rapid capsize and abrasions on the front tire showed both wheels must have locked.

Soulliere's friend's father testified about taking the motorcycle to the shop and riding it without any brake issue after the accident. The trial court again excluded the officer's testimony based on the accident report, finding it untrustworthy and lacking foundation.

The jury found for Soulliere on his theories of design defect, manufacturing defect, failure to warn, and negligent recall, awarding about $11 million in compensatory damages. It also found Suzuki had acted with malice, oppression, or fraud, ultimately awarding another $150 million in punitive damages. On Suzuki's motion, the trial court granted a new trial on

punitive damages unless Soulliere accepted a reduction to $30 million, which he did.

## DISCUSSION

## I.

### HYATT'S SEAL-DISRUPTION TESTIMONY WAS ADMISSIBLE

The trial court properly admitted Hyatt's seal-disruption testimony. Although Suzuki separately challenges Hyatt's pre-retrial offer of proof, Hyatt's opinion is properly evaluated on the full record. (Cf. *Buckner v. Milwaukee Electric Tool Corp.* (2013) 222 Cal.App.4th 522, 540 ["[t]he judgment, which was based on more evidence, superseded" a pretrial summary adjudication ruling "based on more limited evidence"].)

Trials courts act as gatekeepers to exclude expert opinions that are speculative or unsupported. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771–772 (*Sargon*).) The threshold is modest: the court must determine only whether the material the expert relies on provides "a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture." (*Id.* at p. 772.) It does not consider the opinion's weight and must exclude only "'clearly invalid and unreliable'" opinions. (*Ibid.*) We review the court's evidentiary ruling for abuse of discretion. (*Id.* at p. 773.)

Hyatt's theory met this threshold. He grounded his opinion in hydraulic principles, physical evidence from exemplar master cylinders, and his observations and testing. And there was sufficient evidence to support any assumed facts.

Initially, evidence showed that corrosion in affected front brake master cylinders produced solid particles capable of disturbing seals. Hyatt and Kar both observed solid corrosion particles inside exemplar cylinders;

9

both identified marks on piston seals consistent with solid particles becoming trapped and disturbing the seal.

Next, there was evidence that trapped particles could create leak paths sufficient to cause brake failure. Hyatt used a "loose and compressible" plastic exemplar to measure the gap a trapped particle could produce. From Kar's testimony that some corrosion debris was "hardened," it was reasonable to infer that corrosion particles could create comparable gaps. Hyatt then created a seal with an equivalent channel and placed it in a functioning master cylinder, producing complete brake failure.

Suzuki's reliance on *Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363 is thus inapposite. The court there found certain expert opinions speculative because they relied on data and incidents that were not shown to be comparable to the circumstances at issue. (*Id.* at p. 1371–1372 [no evidence that other tire failures were substantially similar]; *Id.* at p. 1374–1375 [effects of rough roads versus tread separation].) Unlike in that case, the jury here heard testimony about the relevant materials' hardness that allowed it to assess if Hyatt's plastic particle reasonably simulated a corrosion particle.

Finally, a reasonable basis existed for inferring that a disruption could be temporary. Hyatt analogized the mechanism to a pine needle trapped under a windshield wiper: an obstruction may temporarily lift the sealing surface, move with it, and later dislodge, allowing normal function to resume. The inference that a trapped particle could clear required no unreasonable leap of logic.

Suzuki's criticisms go to the weight of Hyatt's testimony, not its admissibility. It contends Hyatt made unsupported assumptions about the existence, entrapment, and effect of a hard corrosion particle by failing to test

10

each individual step. But science is dynamic, iterative, and inherently inferential. The law recognizes that "expert witnesses may acquire knowledge through their own experimentation, observations and personal experience." (*People v. Valencia* (2021) 11 Cal.5th 818, 831, fn. 13.) Hyatt's experiments provided a "reasonable basis for [his] opinion." (*Sargon*, *supra*, 55 Cal.4th at p. 772.) And Suzuki ignores some of the evidence that supplied the necessary foundation. For example, Suzuki faults Hyatt for not testing corrosion particles to see if they could disrupt the piston seal. But it overlooks his testimony about the softness of the plastic and the seal and Kar's testimony that some corrosion debris is "hardened."

## II.

### SOULLIERE SUFFICIENTLY SHOWED CAUSATION

We review the verdict for substantial evidence, viewing the record in the light most favorable to the judgment. (*Flores v. Liu* (2021) 60 Cal.App.5th 278, 296.) Absolute certainty is unnecessary; the evidence only must show causation is more probable than not. (*Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 578.)

The jury's finding of causation is adequately supported by a four-step chain of reasoning. First, the jury could credit Soulliere and his accident reconstructionist to find the front brake temporarily failed.

Second, the post-accident sponginess suggested the motorcycle had the recall defect—nonuniform coating of the zinc piston. Although Suzuki notes the absence of pre-accident sponginess, Hyatt testified that corrosion-produced gas accumulates slowly and may not be immediately noticeable.

Third, Hyatt's seal-disruption theory linked the temporary brake failure to the recall defect. The evidence supported findings that corrosion in affected front brake master cylinders produced solid particles capable of

11

disturbing the seal and that a trapped particle could create a leak path large enough to cause temporary loss of braking, until dislodged.

Finally, the jury heard no evidence of any reasonable alternative cause of brake failure. Hyatt testified that if Soulliere had brake failure, it had to be through seal disruption or gas accumulation. Suzuki contended that no brake failure occurred at all—instead, Soulliere caused the wheels to lock by overbraking—but the jury was entitled to find otherwise.

This causal link is stronger than that deemed sufficient in *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187 (*Sarti*), a seminal causation case. There, the plaintiff became ill after eating raw tuna, though the offending bacteria instead matched raw chicken. (*Id.* at p. 1191.) The court concluded the restaurant's unsanitary practices and expert testimony on cross-contamination permitted an inference that cross-contamination caused the illness. (*Id.* at p. 1207.) And hypothetical alternative causes (like touching a contaminated doorknob) did not defeat the claim absent "substantial evidence *requiring a finding*" that they actually occurred. (*Id.* at pp. 1210–1211.)

Here, as in *Sarti*, the evidence supported the immediate cause (temporary brake failure/bacteria), the wrong (the recall defect/unsanitary practices), and a plausible mechanism linking them (seal disruption/cross-contamination). But unlike in *Sarti*, Suzuki identifies no alternative cause of the immediate culprit (brake failure) at all; and Hyatt affirmatively ruled out any unrelated to the recall condition. The jury therefore had substantial evidence to find causation.[4]

---

[4] We thus reject Suzuki's claim that the recall evidence was inadmissible due to a lack of causation evidence. It forfeited its challenges to

12

## III.

### THE COURT SHOULD HAVE ADMITTED THE STATEMENT
### RECORDED IN THE ACCIDENT REPORT

Suzuki offered Soulliere's statement that he "was forced to apply his brakes locking up his wheels," recorded in the accident report, under the past recollection recorded hearsay exception. (Evid. Code, § 1237.)[5]

The trial court heard from the officer at a lengthy section 402 hearing. The officer confirmed he prepared the accident report. His custom and practice was to write reports soon after the accident, to prepare complete and accurate reports, and to include information from witnesses shortly after receiving it. When asked about Soulliere's statement—which was not set off with quotation marks in the report—the officer could not confirm Soulliere's exact words. But he testified, "I'm confident if that's what's written in the report, then that's a true statement that [Soulliere] made"—Soulliere said either those words or words to that effect. The officer also testified that if Soulliere had told him the brakes failed, he would have included that claim in the report.

Following extensive argument and colloquy between the trial court and the parties, spanning almost eight pages of transcript, the trial court excluded the statement recorded in the report as hearsay. It concluded the statement did not qualify as a past recollection recorded and was untrustworthy. The court pointed out that neither Soulliere nor the officer recalled the conversation and opined Soulliere was "heavily sedated." It

---

the recall evidence on any other grounds. (See *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817 [contention forfeited absent meaningful analysis supported by citation to authority].)

[5] Undesignated statutory references are to this code.

added that the officer's report was a summary containing ambiguous phrasing, explaining that "locking brakes could be back brakes, front brakes, both brakes, nobody knows." The court rejected Suzuki's argument that the statement was relevant to show Soulliere did not mention brake failure, stating the exception is "for statements made, not for statements not made."

While we appreciate the court's extensive analysis, we conclude the statement should have been admitted under the past recollection recorded exception.[6] A witness's prior statement is admissible if the witness lacks sufficient present recollection, the statement is recorded in writing and would be admissible if given on the stand, and the writing was (1) made when the matter was fresh in the witness's memory, (2) made by the witness, (3) affirmed by the witness as true, and (4) authenticated as an accurate record. (§ 1237, subd. (a).) These foundational requirements provide the necessary indicia of trustworthiness for admission. (Fairbank et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2025) ¶ 8:1363.) If they are met, the writing may be read into evidence. (§ 1237, subd. (b).)

As with other preliminary facts, the trial court generally decides if the witness's affirmation of the statement as true is sufficiently reliable. (§ 405, subd. (a); *People v. Cowan* (2010) 50 Cal.4th 401, 467.) But when "[t]he proffered evidence is of a statement . . . of a particular person and the preliminary fact is whether that person made the statement," the court's role

---

[6] Vehicle Code section 20013 makes accident reports themselves inadmissible. But this provision does not require courts to exclude otherwise admissible information recorded in them. (*Sherrell v. Kelso* (1981) 116 Cal.App.3d Supp. 22, 31; *id.* at p. 33 [officer may read statements in report into evidence as past recollection recorded, notwithstanding Veh. Code, § 20013].) Suzuki did not seek to introduce the accident report itself and we do not suggest the document was admissible—only Soulliere's statement recorded in it.

is limited to deciding if there is enough evidence to for the jury to find that fact. (§ 403, subd. (a).)

Here, the officer's testimony established each requirement. He lacked recollection of Soulliere's oral statement, which he had recorded in writing and which would have been admissible if the officer had given it on the stand as a party admission. (§ 1220.) The officer confirmed that, under his routine practice, he would have prepared the report while the events were fresh in his memory. And he affirmed his report as a true account of Soulliere's statement, again based on his routine practice. (See, e.g., 5 Jones on Evidence (7th ed.) § 32:33 [statements like "'I always check reports like these for accuracy before I file them'" are sufficient].) No more was required.

We understand the trial court's concerns about the accuracy of Soulliere's statement to the officer, given that he made it while at the hospital, following surgery.[7] But the relevant "statement" requiring indicia of trustworthiness under section 1237 was what the officer recorded in the report. As a party admission, Soulliere's oral statement required no such indicia of trustworthiness. (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2025) Admissions and Confessions, § 3.13 ["a party cannot be permitted to object to their own hearsay statement as being unreliable and untrustworthy"].)

The trial court's observation that the statement recorded in the report was not verbatim "does not automatically render any statements of a party inadmissible, but instead goes to the weight of such evidence." (*People*

---

[7] On the other hand, it was Soulliere who called the officer, about 48 hours after the accident, and provided a detailed narrative of the accident consistent with other evidence. The jury would have been free to accept or reject Soulliere's account, as recorded by the officer.

*v. Riccardi* (2012) 54 Cal.4th 758, 832.) "We have long recognized that, in this context, persons are often unable ""to state the exact language of an admission."""" (*Ibid.*) It was for the jury to decide if the officer reliably recounted Soulliere's statement. (§ 403, subd. (a).)

And once the statement in the report is admitted, it is up to the jury to determine whether to draw inferences from the "statements not made"—Soulliere's omission of brake failure. "'[R]ecent fabrication may be inferred when it is shown that a witness did not speak about an important matter at a time when it would have been natural for him to do so.'" (*People v. Riccardi, supra*, 54 Cal.4th at p. 803.)

We find it reasonably probable that Suzuki would have achieved a better outcome had the jury been permitted to hear the evidence. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [harmless error standard]. The officer's recounting of Soulliere's statement was central to Suzuki's defense theory that Soulliere's front brake did not fail. The officer was a neutral witness who could testify that Soulliere, shortly after the accident, told the police his "wheels" had locked and said nothing about brake failure. This would have bolstered the defense expert's interpretation of the otherwise equivocal skid-mark evidence. And it supports Suzuki's position that Soulliere began claiming brake failure only after he learned about the recall. While Soulliere contends the jury would have discounted the report for various reasons, we find none so compelling to foreclose prejudice.

On retrial, absent a material change in circumstances, the trial court should admit the statement recorded in the accident report as a past recollection recorded.

16

## IV.

Suzuki contends the trial court gave an erroneous instruction on the consumer expectations theory of a design defect claim. We find no error in the instruction.

The court instructed the jury under CACI No. 1203 that to establish a design defect claim under a consumer expectations theory, Soulliere was required to show the following: (1) that Suzuki manufactured the motorcycle, (2) that the "motorcycle did not perform as safely as an ordinary consumer would have expected it to perform" when used in a reasonably foreseeable way, (3) that Soulliere was harmed, and (4) that the "motorcycle's failure to perform safely was a substantial factor in causing" the harm.

Suzuki misapprehends the definition of a design defect by contending element (4) of CACI No. 1203 must expressly require a finding that the motorcycle's "design" caused Soulliere's harm. Our Supreme Court has explained that under the consumer expectations test, "a product *is* defective in design if it *does* fail to perform as safely as an ordinary consumer would expect." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 562; accord, *Demara v. The Raymond Corp.* (2017) 13 Cal.App.5th 545, 557.) In other words, it is the failure to perform safely that establishes a design defect—the phrases "failure to perform safely" and "design defect" are essentially interchangeable for making a prima facie case under the consumer expectations test.[8] Element (4)'s requirement that the failure to perform safely caused the injury was therefore sufficient. CACI No. 1203 was

---

[8] For this reason, statements in various cases cited by Suzuki suggesting that the defect must cause the harm are inapposite.

17

adopted in 2003 and we are unaware of any published California case suggesting otherwise.

Suzuki's alternative contention that the law-of-the-case doctrine demanded this additional requirement misreads this court's prior opinion. In the prior appeal, Soulliere argued that the motorcycle was defective because it did not stop when he applied the brakes. This court rejected that argument as insufficient because the evidence showed the brakes had worked before and after the accident. As we read the prior opinion, it saw Soulliere's testimony that the front brake had not worked as insubstantial—given the other evidence—without expert testimony linking the recall condition to brake failure. The prior opinion did not discuss, let alone decide, the contours of the consumer expectations theory.

While Suzuki contends the court wrongly rejected two other proposed special instructions, it does not attempt to show that these instructions were necessary given the other instructions.[9] (See *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 44 [court may decline an instruction adequately covered by others].) We therefore decline to address these claims. (*Pacific Bell Telephone Co. v. County of Placer* (2025) 111 Cal.App.5th 634, 640 ["Appellants must make sufficient arguments to establish trial court error"].)

---

[9] The proposed instructions stated that (1) a product cannot be found defective "solely because an accident happened or injuries were suffered"; and (2) a defendant "is not liable simply because an accident involving its product has occurred and someone was injured." But some of the court's instructions covered similar ground. (E.g., CACI No. 1202 [defining manufacturing defect].)

## V.

### SOULLIERE FAILED TO SHOW SUZUKI'S FINANCIAL CONDITION
### SUFFICIENTLY TO SUPPORT PUNITIVE DAMAGES

Suzuki contends the evidence was insufficient to support a punitive damages award because it did not address Suzuki's overall financial condition. The evidence instead focused only on sales, profits, and income. The parties stipulated that in 2022, Suzuki reported about $34 billion in net sales, $2 billion in profits, and $1.6 billion in "net income attributable to owners of the parent."[10]

We agree this evidence was insufficient. Punitive damages require evidence of the defendant's financial condition—its net worth or "'actual wealth.'" (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194 (*Soto*).) Profit or income figures are usually insufficient because they say nothing about the "'liabilities side of the balance sheet.'" (*Ibid.*) That is the case here. The stipulated figures disclose nothing about Suzuki's liabilities, losses, debt load, or long-term obligations. Single-year income and profit figures are additionally inadequate because they may reflect extraordinary events like asset sales.[11] The stipulation simply did not establish Suzuki's financial condition, net worth, or actual wealth.

---

[10] Nothing in the record supports Soulliere's speculation that "net income attributable to owners of the parent" represents a distribution to a parent company and suggests Suzuki carried minimal liabilities. Suzuki represents it has no parent company.

[11] We are unpersuaded by Soulliere's citation to a Ninth Circuit case that, without authority or analysis, relied on single-year profit numbers as an alternative basis for affirming punitive damages. (See *Freund v. Nycomed Amersham* (9th Cir. 2003) 347 F.3d 752.)

19

Suzuki had no duty to prove its own financial condition. (See *Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) Soulliere's cases do not impose that burden. One noted a defendant's failure to rebut the plaintiff's net worth methodology. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1697–1698.) Another approved of compensatory damages for wrongful occupation of real property based on a defendant's gross revenue from the property, where the defendant introduces no evidence of relevant expenses. (*Bailey v. Outdoor Media Group* (2007) 155 Cal.App.4th 778, 780–781.) Neither case would require Suzuki to meet Soulliere's burden for him.

Without evidence of overall financial status, """it is impossible to say that any specific award of punitive damage is appropriate.""" (*Soto, supra,* 239 Cal.App.4th at p.194.) Soulliere had a full and fair opportunity to present evidence of Suzuki's financial condition and does not contend otherwise. Having failed to meet his burden, he is not entitled to a retrial on punitive damages. (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 681.)

## DISPOSITION

The judgment is reversed. The matter is remanded with instructions to set the matter for a new trial, excluding punitive damages. Suzuki is awarded costs on appeal.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.